LATHROP v. MATHERS et al.

(Supreme Court, Appellate Division, First Department.   March 24, 1911.)

1. LARCENY (§ 15*)—ACTS CONSTITUTING.

Under Pen. Code, § 528, providing that, to constitute larceny, there must be an intent to defraud the true owner of his property, or to appropriate the same to the use of the taker, and the property must be taken from the possession of the true owner, or some other person, etc., a traveling salesman working for a salary payable monthly, but required to pay his own expenses, who, as contemplated by the parties, took a trunk with samples to a hotel where he became ill and unable to work, is not guilty of larceny of the trunk and samples merely because he failed to pay his hotel bill, and thereby release the trunk and samples from the hotel keeper's lien.

[Ed. Note.—For other cases, see Larceny, Cent. Dig. §§ 39–42; Dec. Dig. § 15.*]

2. MALICIOUS PROSECUTION (§ 21*)—DEFENSES—ADVICE OF COUNSEL.

A defendant sued for malicious prosecution may not rely on the advice of counsel, where all the material facts were not stated by him to the counsel.

[Ed. Note.—For other cases, see Malicious Prosecution, Cent. Dig. §§ 40–44; Dec. Dig. § 21.*]

Appeal from Trial Term, New York County.

Action by George A. Lathrop, Jr., against Joseph Mathers and others. From a judgment dismissing the complaint at the close of the evidence on the trial of the issues, plaintiff appeals. Reversed, and new trial granted.

Argued before INGRAHAM, P. J., and LAUGHLIN, CLARKE, SCOTT, and MILLER, JJ.

Jonathan Deyo, for appellant.
Abraham Gruber (T. B. Chancellor, on the brief), for respondents.

LAUGHLIN, J. This is an action to recover damages for malicious prosecution. On the 7th day of May, 1903, the plaintiff entered the employ of the defendants as a traveling salesman of tailors' trimmings pursuant to a contract in writing of that date, by which defendants agreed to pay him a salary of $2,250 per annum, payable monthly, and he was to bear his own expenses, and if 9 per cent. of the sales made

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

by him, deducting for goods returned and bad debts, amounted to more than his salary, they further agreed to pay him the excess at the end of the year. The agreement was to continue until the 31st day of December thereafter, and with the privilege to the defendants to renew it for a year on a basis for compensation therein provided. The plaintiff remained in the employ of the defendants, and was not discharged therefrom until on or about the 16th day of September thereafter, when, by direction of the defendants, he was arrested by detectives who were members of the department of police of the city of New York on the charge of grand larceny in the second degree in having stolen and appropriated to his own use a trunk and samples, the property of the defendants, of the value of $125. He was held to bail in the sum of $1,000, and detained in custody on account of inability to give bail for a period of six days, when he was duly discharged.

On entering the employ of the defendants, plaintiff remained at their place of business in the city of Greater New York, receiving instructions until the latter part of the month, the precise day not being given, and then, by their direction, he went to Cleveland, Ohio, with a view to selling defendants' goods in that city. Samples of defendants' goods were selected and packed in one of their trunks by their direction and sent to the Grand Central Station, and a claim check therefor was delivered to plaintiff. Plaintiff checked the trunk on his ticket to Cleveland, and on his arrival there had it taken to the Baldwin Hotel, where it was understood between him and his employers he was to stop. On arriving there he became ill with pneumonia, and during his entire period of employment he never directly procured an order for defendants, but it appears that one small order came in on his account. He was confined at the hotel through illness for a week or 10 days, and then went to the Lakeside Hospital in Cleveland, leaving the trunk at the hotel. During the time he was at the Baldwin Hotel before going to the hospital, he incurred a bill of upwards of $60, for room and restaurant charges and the services of a physician secured through the manager of the hotel. The latter part of June the plaintiff left the hospital and went home to Richmond, Va., where he improved in health, and he evidently thought that he was able to resume his duties the latter part of July.

On plaintiff's arrival in Cleveland, he notified defendants of his illness, and an agent of theirs by their direction called on him to ascertain and report his condition, and they paid to him $100 through this agent. Although the contract provided for the payment of his salary monthly, he says that it was understood that it was to be paid semimonthly; and it is to be inferred from a letter which he wrote on the 27th day of June that he had been paid his salary to the middle of the month of June, for in that letter he requested them to send the balance of his salary for June. Apparently they did not comply with this request, and on the 17th of July he again wrote them, stating that he expected to be able to leave Richmond on the 21st of that month, and saying, "So please send me my month's salary to the 15th inst., in accordance with your letter of June 30th, '03." Defendants'

letter of June 30th asserts that they had paid to him "approximately $250," and that, inasmuch as he had performed no services, they would not remit further funds, but would take the matter up with him when he reported to the office, which they suggested that he do as soon as able. He came to New York the latter part of July, and stated to defendants' representative, one Shallow, who had charge of the salesmen in his department, that he considered that he was able to resume his duties, but that he would need funds as he had been obliged to borrow some money in Virginia and owed the hotel bill at Cleveland, where he had left the trunk and samples. Defendants gave him $100 on the understanding that he would proceed to Cleveland and resume his duties, which he never did.

His testimony, however, and that of other witnesses, called in his behalf, tends to show that he was taken ill again, and by illness was prevented from going to Cleveland, and that he notified the defendants thereof, although this is controverted. It appears by a letter written by plaintiff to defendants and produced by them that they were informed by plaintiff when he went to the hospital that their agent had called on him relative "to a communication he had relative to my sample trunk," and that he had taken "'all necessary precaution as to its safety," and that he had it in the check room of the Baldwin Hotel, and held a receipt which bound the hotel "and also makes them responsible for its safety." It further appears by his testimony that he informed the defendants or their representative with whom he was authorized to transact business that the trunk was held for his hotel bill, and that he did not have sufficient funds to pay the bill at the time he left the hotel. Plaintiff also testified that there were excess baggage charges on the trunk, and that he did not need it on his trip to Virginia, and, inasmuch as he intended after recovering from his illness to return to Cleveland and resume his duties there, he never obtained the trunk from the hotel. Early in September—the testimony is conflicting as to the date—plaintiff was walking down Broadway accompanied by one Shields, and met the defendant Mathers and said Shallow, and was stopped by them and Mathers demanded the trunk; that he informed them that he could not get the trunk, as it was held at the Baldwin Hotel in Cleveland for his hotel bill, which he could not pay when he left; and that he had a brass check for it which he was willing to turn over to them, but that he had no money with which to redeem the trunk, and that it was impossible for him to raise money; that Mathers replied, "If you do not get that trunk within six days and have it in my office, I will expose you to your friends if I cannot do worse. That is all I have to say"; that he and his companion attempted to impress on Mathers that he had been ill and unable to go to Cleveland as he intended, and that he had sent word to defendants to that effect, but that Mathers would not listen to him. Some days after this the arrest was made.

The defendants were amply justified in questioning the truthfulness and good faith of the plaintiff on the question as to whether or not he intended, when he obtained the further advance of money from them, to resume his duties under the contract with respect to the use

made of that money, and with respect to the continuance of his incapacity to work; but it cannot be said as a matter of law on this evidence that there was probable cause to justify their having him arrested on the charge of grand larceny in the second degree. He did nothing to or with their trunk after he directed it to be sent to the hotel and left it there. If he committed the crime of grand larceny in the second degree, therefore he must have committed it at the time he went to or left the hotel, and not at the time the defendants demanded the return of the trunk. The property being of the value of more than $25, the crime, if it be larceny at all, was grand larceny in the second degree. Pen. Code, § 531. Section 528 of the Penal Code, as it existed at the time in question, defined larceny, and it is expressly therein provided that to constitute the crime of larceny there must be an "intent to deprive or defraud the true owner of his property, or of the use and benefit thereof, or to appropriate the same to the use of the taker," or to some other person, and that the property must be taken from the possession of the true owner or some other person, or possession must be obtained by fraud or the property must be secreted, or withheld, or appropriated to the use of the person charged with the crime, or the use of some person other than the owner. What the plaintiff did with the trunk and samples was contemplated by the parties, and was authorized by the defendants. It was, of course, his duty to pay his hotel bill, and to release their trunk and samples from the hotel keeper's lien, but his failure to do that does not constitute the crime of larceny, and did not justify them in charging him with that crime, and thus, through the aid of the criminal law, enforce performance of an obligation their employé owed to them. With respect to the claim made in behalf of respondents that they acted on the advice of counsel, it is sufficient to say that the record shows that all of the material facts were not stated to counsel, and therefore his advice cannot avail the defendants, even though it might otherwise afford them complete protection as distinguished from a mere fact·in mitigation of damages, a point on which we express no opinion.

It follows, therefore, that the judgment should be reversed, and a new trial granted, with costs to appellant to abide the event. All concur.