John RUGE, Clerk of the Porter Superior Court, and Michael M. Packard, Commissioner of the Indiana Bureau of Motor Vehicles, Appellants (Defendants Below),

v.

David KOVACH, Lloyd Ferguson, Fred Paul, and Dennis Dowell, Appellees (Plaintiffs Below).

No. 484S116.

Supreme Court of Indiana.

Aug. 30, 1984.

Rehearing Denied Oct. 22, 1984.

Linley E. Pearson, Atty. Gen., Arthur M. Small, Deputy Atty. Gen., Indianapolis, for appellants.

Robert P. Harper, Larry W. Rogers, Harper, Rogers & Harper, Valparaiso, for appellees.

PIVARNIK, Justice.

This appeal comes directly to us pursuant to Ind.R.App.P. 4(A)(8) since this case involves an Indiana statute that "has been declared unconstitutional in whole or in part." The statute involved is Indiana's Operating a Vehicle While Intoxicated Law, Ind.Code §§ 9–11–1–1 through 9–11–4–15 (Burns Supp.1984) (effective September 1, 1983). We note that although minor amendments were made to this statute effective April 1, 1984, this case pertains only to the original statute effective September 1, 1983.

Plaintiffs-Appellees each were arrested and charged in Porter County with driving while intoxicated. Specifically, David Kovach, a Pennsylvania resident and interstate truck driver, was arrested on September 12, 1983, after registering a .11% blood alcohol level during a breathalyzer test. Lloyd Ferguson, an Illinois resident, was arrested on September 8, 1983, after registering .15% on his breathalyzer test. Fred Paul of Porter County was arrested for violating Ind.Code § 9–11–2–2 on September 6, 1983. Dennis Dowell, also of Porter County, was arrested on September 11, 1983, for violating Ind.Code § 9–11–2–2 having registered a .11% blood alcohol level. The record does not indicate any additional information about the circumstances surrounding these arrests including how Appellees Kovach and Ferguson were charged. The record nonetheless indicates that these Appellees joined together and filed a complaint in the Porter Superior Court on September 14, 1983, seeking declaratory and injunctive relief to prevent Appellant Clerk of the Porter Superior Court and the Indiana Bureau of Motor Vehicles from taking any administrative action against them pursuant to Ind.Code § 9–11–1–1 et seq. Appellees specifically alleged that the statutory scheme established by Ind.Code § 9–11–1–1 et seq. is unconstitutional because it violates their constitutional rights to "Due process in that it is coercive in nature and forces guilty pleas ... and, ... it denies Plaintiffs the right to drive without a judicial hearing." Appellees specifically sought:

"[A ruling] declaring that portion of IC 9–11–1–1 dealing with the preconviction suspension of a persons (sic) drivers li-

cense is unconstitutional, a temporary restraining order prohibiting [Appellant] John Ruge from forwarding notice of an arrest to the Bureau of Motor vehicles, and for an injunction prohibiting [Appellant] Michael Pachard (sic) from suspending the drivers licences (sic) of any person before conviction of the crime of driving while intoxicated."

On September 16, 1983, the first of over seventy-five Motions for Leave to Intervene as Intervenor Plaintiffs was filed with the Porter Superior Court which court subsequently ruled that all such motions filed by December 2, 1983, would be granted. The trial court also issued a Temporary Restraining Order to enjoin Appellant Clerk of the Porter Superior Court from transmitting any licenses to the Bureau of Motor Vehicles pending the trial court's judgment. Two motions for change of venue from the judge were granted before the "all-inclusive hearing" on the merits finally was held on December 7, 1983. On December 28, 1983, the trial judge issued his judgment finding Ind.Code §§ 9–11–1–1 through 9–11–4–15 unconstitutional and void. The trial judge *sua sponte* amended his judgment on December 30, 1983, to limit his prior judgment to the administrative suspension provisions of Ind.Code §§ 9–11–1–1 through 9–11–4–15. He specifically held:

"IT IS THEREFORE ORDERED, CONSIDERED, RULED AND ADJUDGED that I.C. 9–11–1–1 through 9–11–4–15, be and hereby is held unconstitutional on its face and as applied in Porter County, Indiana, and is hereby declared void (as to the Statutory provisions for suspension procedures and mandatory suspension of drivers licenses, and as said statutes apply thereto, and that the other remaining parts and provisions of said Statutes remain in full force and effect). It is further Ordered that the restraining orders heretofore issued herein with reference to the Clerk of the Courts of Porter County, Indiana, and the Commissioner of the Bureau of Motor Vehicles of Indiana, be, and hereby are made permanent injunctions."

Appellants now raise the following two consolidated issues: 1. whether the pretrial summary suspension protocol established by Ind.Code §§ 9–11–1–1 through 9–11–4–15 is constitutional; and 2. whether the *per se* offense of operating a motor vehicle with a blood alcohol level of .10% or more as established by Ind.Code § 9–11–2–1 is constitutional.

Although Appellants appear to have expended considerable energy in briefing issue II, we decline to consider it. We so hold finding that the trial court in its amended judgment carefully declared only the summary suspension procedure established by Ind.Code § 9–11–1–1 *et seq.* unconstitutional and void. In fact, the trial court specifically stated that the "other remaining parts and provisions of said Statutes remain in full force and effect." Those other parts include the *per se* offense section. Notwithstanding this fact that the trial court did not declare the *per se* offense section unconstitutional, the record does not indicate that any of the Appellees were charged with the *per se* offense, Ind.Code § 9–11–2–1. It has been consistently held that before this Court has jurisdiction by reason of a constitutional question, such question must be timely raised before the trial court and must actually be a *bona fide* issue which is not ancillary to the case. *V.H. Juerling & Sons, Inc. v. Second National Bank of Richmond,* (1968) 250 Ind. 325, 236 N.E.2d 43, *aff'd after trans. sub nom. V.H. Juerling & Sons, Inc. v. First National Bank of Richmond,* (1968) 143 Ind.App. 671, 242 N.E.2d 111, *reh. denied* (1969). We find no showing in the record or in the briefs that the *per se* offense section of Ind.Code § 9–11–1–1 *et seq.* was a *bona fide* issue in this case. For these reasons we decline to consider Appellant's issue II.

I

Appellants argue that the pretrial summary suspension protocol established by Ind.Code §§ 9–11–1–1 through 9–11–4–15 is constitutional despite the trial court's contrary decision. We agree. The specific

code sections at issue are contained in § 9–11–4 and establish the following procedures. A law enforcement officer having probable cause to believe that a driver was operating a motor vehicle while "intoxicated" in violation of § 9–11–2–1 or § 9–11–2–2 stops the driver. The officer "shall" offer the driver the opportunity to submit to a "chemical test" and "must" administer that test within three hours after the officer had said probable cause. [§ 9–11–4–2]. The driver "must" submit to each chemical test offered to comply with the "implied consent" provisions of § 9–11–4. [§ 9–11–4–2]. If the driver refuses to submit to a chemical test, then the driver "may" be arrested by the law enforcement officer without a warrant for an offense under § 9–11–2, presumably § 9–11–2–2. [§ 9–11–4–3(c); § 35–33–1–1(3) (Burns Supp. 1984)]. There is no summary suspension procedure established by § 9–11–4 for the driver who is not arrested. If the driver is arrested, then the "arresting officer" "shall" advise the driver that his refusal "will" result in the suspension of his driving privileges. [§ 9–11–4–7(a)]. If the driver still refuses to submit to a chemical test after having been so advised, then the arresting officer "shall" obtain the person's drivers license, issue a receipt, complete a probable cause affidavit conforming to the requirements of § 9–11–4–8(c), and submit said affidavit to the prosecutor of the county in which the alleged offense occurred. [§ 9–11–4–7(b)]. The prosecutor "shall" "promptly" submit a probable cause affidavit or present sworn testimony to a "judicial officer" for a probable cause determination to justify the warrantless arrest. [§§ 35–33–7–1 and 35–33–7–2 (Burns Supp.1984)]. If the judicial officer determines that there was probable cause to believe that the driver violated § 9–11–2 and if charges pursuant to § 9–11–2 are pending against the driver, then the prosecutor "shall" deliver the arrested person's drivers license and a copy of the arresting officer's probable cause affidavit to the circuit court clerk. [§. 9–11–4–8(a)]. The circuit court clerk "shall" forward said license and affidavit to the Bureau of Motor Vehicles [§ 9–11–4–8(b)] who "shall" suspend for one year the driving privileges of the driver who refused to submit to a chemical test. [§ 9–11–4–9(a)]. When the Bureau suspends a person's driving privileges, the Bureau "shall immediately" notify the person of the suspension and of his "right" to a "prompt judicial hearing". [§§ 9–11–4–9(c) and 9–11–4–10(a)]. The judicial review obtained by said hearing "shall be limited" to ascertaining whether a judicial officer has determined that the arresting officer had probable cause to believe that the driver violated § 9–11–2 and whether the driver refused to submit to a chemical test. [§ 9–11–4–10(b)]. Notwithstanding any suspension, the Bureau "shall" be ordered to reinstate the driving privileges of a person whenever all of the § 9–11–2 charges against him are dismissed and the prosecutor states that no such charges will be refiled. [§ 9–11–4–11]. If a driver is stopped and submits to a chemical test which results in "relevant evidence" that his blood alcohol level was at least .05% but less than .10% at the time of the alleged offense [§ 9–11–4–3(a)], then he "may" be arrested [§ 9–11–4–3(b)] but § 9–11–4 does not provide for a pretrial summary suspension of that person's driving privileges. If the chemical test indicates a blood alcohol level of .10% or more, "*prima facie* evidence" that the driver was intoxicated [§ 9–11–1–7], then that driver "shall" be arrested ·[§ 9–11–1–3(b)] and § 9–11–4 dictates that the same suspension procedure outlined above be followed. Although the driver who is arrested after refusing to submit to a chemical test receives a one year suspension, the driver whose arrest is predicated upon *prima facie* evidence showing his intoxication gets a suspension of one hundred eighty days or less if the charges are more quickly disposed of. [§ 9–11–4–9(b)]. We conclude from our survey of the statutory protocol set forth above that § 9–11–4 provides for a pretrial summary suspension only when (a) a driver has been arrested and refuses to submit to a chemical test after having been advised that the refusal will result in a suspension of his driving privileges or sub-

mits to a chemical test that results in *"prima facie"* evidence of intoxication, (b) a judicial officer has determined that the arresting officer had probable cause to believe that the driver violated § 9–11–2 when the test was offered, and that the driver either refused to take the test or took the test and it resulted in *"prima facie"* evidence of intoxication, and (c) the driver has charges pending against him pursuant to § 9–11–2 or will be charged for violating § 9–11–2.

■ It is a well-established rule that an act of the legislature must be afforded a presumption of constitutionality. This is because the Indiana Constitution explicitly vests in the General Assembly the exclusive power to legislate. Ind.Const.Art. 4, § 1. Accordingly, the burden to rebut this presumption is upon any challenger and all reasonable doubts must be resolved in favor of an act's constitutionality. *Bunker v. National Gypsum Co.,* (1982) Ind., 441 N.E.2d 8, *appeal dismissed,* (1983) 460 U.S. 1076, 103 S.Ct. 1761, 76 L.Ed.2d 338; *Dague v. Piper Aircraft Corp.,* (1981) Ind., 418 N.E.2d 207, *reh. denied.* We therefore look to Appellees to provide us with a reason for finding Indiana's summary suspension procedure unconstitutional.

Appellees first challenge the constitutionality of Ind.Code § 9–11 by arguing that Article 11 is a "criminal statute" which "necessarily implicates" certain "fundamental rights" thereby requiring a "strict-scrutiny" review. A strict-scrutiny review requires determining whether a statute is "narrowly drawn" to promote only a "compelling state interest." *See Roe v. Wade,* (1973) 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147. Appellees specifically contend that such a review will indicate that Ind.Code § 9–11 violates due process and equal protection of law as guaranteed by the Indiana and United States Constitutions. We disagree.

■ Although Chapter 2 of Ind.Code § 9–11 is entitled "Crimes" and creates certain misdemeanor and felony offenses, we presently must review only the summary suspension procedure established by Chapter 4. Chapter 4 provides for administrative suspensions which do not depend upon any criminal conviction and which do not constitute a criminal punishment. The Chapter is entitled "Implied Consent; Administrative and Evidentiary Matters" and replaces Indiana's former "Implied Consent Law", Ind.Code § 9–4–4.5 (Burns 1980). The Court of Appeals considered the former law on several occasions and consistently ruled that proceedings pursuant to it were civil in nature and effect. *Harts v. State,* (1982) Ind.App., 441 N.E.2d 714, *reh. denied* (hearing to determine whether driver refused to submit to a breathalyzer test is a civil hearing); *Steward v. State,* (1982) Ind.App., 436 N.E.2d 859, *trans. denied* (no Sixth Amendment right to counsel in administrative proceeding pursuant to Implied Consent Law because such a proceeding involves a purely civil matter); *Hatch v. State,* (1978) 177 Ind.App. 231, 233, 378 N.E.2d 949 (refusal to submit to a chemical breath test need not be proved beyond a reasonable doubt since the proceeding to determine said refusal is not criminal but administrative); *Davis v. State,* (1977) 174 Ind.App. 433, 367 N.E.2d 1163, *reh. denied.* We agree with the reasoning of these rulings of the Court of Appeals and further hold that they equally apply to Indiana's new Implied Consent Law, Ind.Code § 9–11–4. Ind.Code § 9–11–4 is a civil statute.

■ In addition to erroneously suggesting that Ind.Code § 9–11–4 constitutes a criminal statute, Appellees wrongly argue that this case involves a fundamental right or a suspect class. Neither this Court nor the United States Supreme Court has ever held that there exists a fundamental right to drive a motor vehicle. While the United States Court has blurred the distinction between "right" and "privilege" with respect to driving, that Court did not define driving as a "right" but rather referred to it as an "entitlement." *Bell v. Burson,* (1971) 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90. Likewise, there exists no fundamental right to drive based upon a fundamental right to employment. *See Massa-*

*chusetts Board of Retirement v. Murgia,* (1976) 427 U.S. 307, 96 S.Ct. 2562, 49 L.Ed.2d 520 (governmental employment). We also do not think that the fundamental right to interstate travel implies a fundamental right to drive since the voluntarily induced suspension of a person's drivers license does not necessarily curtail that person's freedom to move from state to state. *See Shapiro v. Thompson,* (1969) 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600. With regard to Appellee's equal protection claim, we find no "suspect class" infringed upon by Ind.Code § 9–11–4. The United States Supreme Court to date has recognized classes based only on alienage, race, and perhaps gender, as inherently suspect. *See Craig v. Boren,* (1976) 429 U.S. 190, 97 S.Ct. 451, 50 L.Ed.2d 397 (gender); *Graham v. Richardson,* (1971) 403 U.S. 365, 91 S.Ct. 1848, 29 L.Ed.2d 534 (alienage); *McLaughlin v. Florida,* (1964) 379 U.S. 184, 85 S.Ct. 283, 13 L.Ed.2d 222 (race). The two classes affected by Ind.Code § 9–11–4, drivers who refuse to submit to a chemical test and drivers who register .10% or more blood alcohol level, clearly are not "suspect." Finding no fundamental right or suspect class involved and at issue in this case, we decline to pursue a "strict-scrutiny" review of Ind.Code § 9–11–4. We nonetheless find that both parties agree that this case presents a due process question since the statute does provide for the temporary taking of an "entitlement" or property interest. *See Dixon v. Love,* (1977) 431 U.S. 105, 97 S.Ct. 1723, 52 L.Ed.2d 172 (case establishing constitutionality of Illinois statute providing for the pre-hearing suspension of a drivers license upon a showing that the driver repeatedly has been convicted of certain traffic offenses). Accordingly, we resort to a less severe "balancing test" to determine whether Indiana's new administrative suspension procedure affords constitutionally sufficient due process to drivers who suffer license suspensions. *See Matthews v. Eldridge,* (1976) 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (case determining what due process is due prior to the initial termination of social security disability payments

pending review). We note that the United States Supreme Court relied upon the *Matthews* "balancing test" to decide a due process question similar to the instant one in *Mackey v. Montrym,* (1979) 443 U.S. 1, 99 S.Ct. 2612, 61 L.Ed.2d 321.

█ In *Mackey,* the United States Court considered "the constitutionality of a statutory scheme for administrative suspension of a driver's license for statutorily defined cause without a pre-suspension hearing." Specifically, the Court faced the due process question presented by a Massachusetts "implied consent" statute mandating the pre-hearing, ninety day suspension of a drivers license for refusing to take a chemical test when arrested for driving while intoxicated. The system instituted by the Massachusetts law and approved by the *Mackey* Court is similar in most respects to the system established by Ind.Code § 9–11–4 except that the Indiana law "statutorily defined" two causes for suspension: chemical test refusal and *prima facie* evidence of intoxication. Notwithstanding this difference, we believe that *Mackey* controls this case. Accordingly, we decide the instant due process question by utilizing the three-factor balancing test set forth in *Matthews* and applied in *Mackey.* The three factors are: 1) private interest involved, 2) risk of erroneous deprivation, and 3) public interest served by pre-hearing suspension.

The first step in the *Matthews* balancing process is identification of the nature and weight of the private interest affected by the official action challenged. Here, as in *Mackey,* the affected private interest is the driver's license to operate a motor vehicle pending the outcome of the review hearing due him. To be sure, that interest is a substantial one since the State will not be able to make a driver whole for any personal inconvenience and economic hardship suffered by reason of an erroneous suspension notwithstanding whatever public transportation may or may not be available. *Mackey, supra; Dixon, supra.* The *Mackey* Court indicated that the actual weight given to this private interest should

depend upon the following three considerations: the duration of the license suspension, the availability of a prompt post-suspension review and the availability of "hardship relief." With regard to the first consideration, the United States Supreme Court affirmed a pre-hearing license suspension of ninety days in *Mackey* and of one year or more in *Dixon*. This consideration therefore does not distinguish the present case involving a statute which requires a ninety day or one year pre-hearing suspension from *Mackey* and *Dixon*. Likewise, we do not think that the protection afforded by the post-suspension review procedure in Ind.Code § 9–11–4 can be significantly distinguished from the protection afforded by the procedures approved in *Mackey* and *Dixon*. The *Mackey* Court found that the Massachusetts statute provided for a post-suspension hearing immediately upon a driver's suspension when initiated by the driver's mere request. The Court found the Massachusetts law in contrast to the Illinois statute it approved in *Dixon* which allowed for post-suspension hearings to be held up to twenty days after receipt of a written request from the affected driver. Our Indiana statute provides for two forms of review in suspension cases. The first review, while not necessitating a hearing, must be automatically conducted *before* a suspension can be made and is by a judicial officer. This judicial review must determine, *inter alia,* that cause for suspension exists according to Ind.Code § 9–11. The second review requires a "prompt judicial hearing" when requested by the affected driver [Ind.Code § 9–11–4–10(b) (effective April 1, 1984) dictates that the request be written, verified and specific]. We now find that "prompt" denotes readiness without delay or unreasonable hesitation and accordingly interpret Ind.Code § 9–11–4–10(a) to comport with *Mackey* and *Dixon*. We also note that the trial court in this case found that all persons charged with violations of Ind. Code §§ 9–11–2–1, 9–11–2–2 and 9–11–2–3, notwithstanding whatever request for a "prompt" hearing they may make, are "entitled by statute to have an Initial Hearing and that Initial Hearing is set within twenty (20) days of the persons (sic) arrest." Since an arrest pursuant to Ind.Code § 9–11–2 must always precede a suspension, the affected driver is even further assured of receiving a judicial hearing either before or shortly after any suspension might become effective. The final consideration in weighing the affected private interest pursuant to *Mackey* is the availability of hardship relief. Of course the weight to be given to this consideration depends upon the driver's vulnerability to being deprived of a license without having had a hearing. Although Ind.Code § 9–11–1–1 *et seq.* does not provide for hardship relief, such relief is available in Indiana. Specifically, Ind.Code § 9–5–2–1 (Burns 1980) provides for a "hardship license" upon petition to the circuit court in the affected driver's county of residence. This analysis of the three considerations deemed significant by the *Mackey* Court in weighing the private interest factor in suspension cases leads us to conclude that the private interest in the instant case, although a substantial one, is of no more weight than that considered by the United States Supreme Court in *Mackey*.

The second factor in the *Matthews* balancing process is the likelihood of an erroneous deprivation of the private interest involved. The *Mackey* Court discussed this factor as follows:

"And, although this aspect of the [*Matthews v.*] *Eldridge* test further requires an assessment of the relative reliability of the procedures used and the substitute procedures sought, *the Due Process Clause has never been construed to require that the procedures used to guard against an erroneous deprivation of a protectible 'property' or 'liberty' interest be so comprehensive as to preclude any possibility of error.* The Due Process Clause simply does not mandate that all governmental decision making comply with standards that assure perfect, error-free determinations. *Greenholtz v. Nebraska Penal Inmates, supra,* [442 U.S. 1] at 7, [99 S.Ct. 2100, at

2103, 60 L.Ed.2d, 668, at 675]. Thus, even though our legal tradition regards the adversary process as the best means of ascertaining truth and minimizing the risk of error, the 'ordinary principle' established by our prior decisions is that 'something less than an evidentiary hearing is sufficient prior to adverse administrative action.' *Dixon v. Love, supra,* [431 U.S. 105] at 113 [97 S.Ct. 1723, at 1728, 52 L.Ed.2d 172, at 180]. And, when prompt postdeprivation review is available for correction of administrative error, *we have generally required no more than the predeprivation procedures used be designed to provide a reasonably reliable basis for concluding that the facts justifying the official action are as a responsible governmental official warrants them to be."*

*Mackey v. Montrym,* 443 U.S. at 13, 99 S.Ct. at 2618, 61 L.Ed.2d at 331 (emphasis added).

An Indiana drivers license is suspended pursuant to Ind.Code § 9–11–4–9(a) when a law enforcement officer had probable cause to believe that a person was driving while intoxicated, offered that person a chemical test and that person refused to submit to the test. This is the same statutorily defined cause for suspension which was considered and approved by the Supreme Court in *Mackey*. The *Mackey* Court specifically found:

> "The officer whose report of refusal triggers a driver's suspension is a trained observer and investigator. He is, by reason of his training and experience, well suited for the role the statute accords him in the presuspension process. And, as he is personally subject to civil liability for an unlawful arrest and to criminal penalties for willful misrepresentation of the facts, he has every incentive to ascertain accurately and truthfully report the facts. The specific dictates of due process must be shaped by 'the risk of error inherent in the truthfinding process as applied to the generality of cases' rather than the 'rare exceptions.' *Matthews v. Eldridge, supra,* [443 U.S.] at 344, 96 S.Ct. 893, 47 L.Ed.2d 18. And, the risk

> of erroneous observation or deliberate misrepresentation of the facts by the reporting officer in the ordinary case seems insubstantial."

*Mackey v. Montrym,* 443 U.S. at 14, 99 S.Ct. at 2619, 61 L.Ed.2d at 332. We note that the Indiana statute requires a pre-suspension judicial review of the police officer's probable cause determination which affords even greater protection to an affected driver than was involved in *Mackey*. *See* Ind.Code § 9–11–4–8(a). Of course the Indiana statute, unlike the Massachusetts statute in *Mackey*, also provides for the suspension of a driver's license when a driver submits to a chemical test and registers .10% blood alcohol level or more. This additional statutorily defined cause for suspension makes our statute akin to the Minnesota statute considered and approved by the Minnesota Supreme Court in *Heddan v. Dirkswager,* (Minn.1983) 336 N.W.2d 54, *reh. denied.* The Minnesota Court held that while the risk of erroneous deprivation is greater in the chemical test failure situation than in the test refusal situation due to the possible error in administering a chemical test, the additional risk "is not to such a degree as to alter the balance struck by the Supreme Court in [*Mackey v.*] *Montrym."* *Heddan v. Dirkswager,* 336 N.W.2d at 62. We agree. We now hold that the chemical test required by our statute represents a "reasonably reliable basis for concluding that the facts justifying the official action are as a responsible governmental official warrants them to be." *Mackey v. Montrym,* 443 U.S. at 13, 99 S.Ct. at 2618, 61 L.Ed.2d at 331. *See generally Schmerber v. California,* (1966) 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908; *Hensley v. State,* (1969) 251 Ind. 633, 244 N.E.2d 225, *reh. denied; People v. Kovacik,* (1954) 205 Misc. 275, 128 N.Y.S. 492.

The last factor for determining the constitutionality of a pre-hearing license suspension is the public interest at stake. The Supreme Court in *Mackey* considered the public interest in keeping roads safe while avoiding undue fiscal and administrative burdens and determined that both interests

were of great public importance. Specifically, the *Mackey* Court decided that the summary suspension procedure available in Massachusetts was critical to deterring drunk drivers and making the State's roads safe while helping to minimize the State's fiscal and administrative burdens. The Court found:

> "We have traditionally accorded the states great leeway in adopting summary procedures to protect public health and safety. States surely have at least as much interest in removing drunken drivers from their highways as in summarily seizing mislabeled drugs or destroying spoiled foodstuffs. *E.g., Ewing v. Mytinger & Casselberry, Inc.* 339 U.S. 594, 70 S.Ct. 870, 94 L.Ed. 1088 (1950); *North American Storage Co. v. Chicago,* 211 U.S. 306, 29 S.Ct. 101, 55 L.Ed. 195 (1908).
>
> The Commonwealth's interest in public safety is substantially served in several ways by the summary suspension of those who refuse to take a breath-analysis test upon arrest. First, the very existence of the summary sanction of the statute serves as a deterrent to drunk driving. Second, it provides strong inducement to take the breath-analysis test and thus effectuates the Commonwealth's interest in obtaining reliable and relevant evidence for use in subsequent criminal proceedings. Third, in promptly removing such drivers from the road, the summary sanction of the statute contributes to the safety of public highways.
>
> The summary and automatic character of the suspension sanction available under the statute is critical to attainment of these objectives. A presuspension hearing would substantially undermine the state interest in public safety by giving drivers significant incentive to refuse the breath-analysis test and demand a presuspension hearing as a dilatory tactic. Moreover, the incentive to delay arising from the availability of a presuspension hearing would generate a sharp increase in the number of hearings sought and therefore impose a substantial fiscal and administrative burden on the Common-

wealth. *Dixon v. Love,* 431 U.S., at 114, 97 S.Ct. 1723, 52 L.Ed.2d 172."

*Mackey v. Montrym,* 443 U.S. at 17, 99 S.Ct. at 26, 61 L.Ed.2d at 334. We now find that Indiana's interest in keeping its highways safe by removing drunken drivers from its roads is every bit as great as that recognized by the Supreme Court in *Mackey.* Accordingly, we find that this most compelling interest in highway safety and public welfare justifies the State in making summary suspensions pending the outcome of the prompt post-suspension judicial hearing available by statute.

We reverse the trial court and hold that the summary suspension protocol established by Ind.Code §§ 9–11–1–1 through 9–11–4–15 is constitutional. This case is remanded to the trial court for further proceedings consistent with this opinion.

GIVAN, C.J., and HUNTER, DeBRULER and PRENTICE, JJ., concur.