Jeffrey M. **REYNOLDS**, Appellant–Petitioner,

v.

**STATE** of Indiana, Appellee–Respondent.

No. 65A05–9712–CR–547.

Court of Appeals of Indiana.

Aug. 27, 1998.

Transfer Denied Oct. 14, 1998.

John D. Clouse, John P. Brinson, Evansville, for Appellant–Petitioner.

Jeffrey A. Modisett, Attorney General, Priscilla J. Fossum, Deputy Attorney General, Indianapolis, for Appellee–Respondent.

## OPINION

BAKER, Judge.

Appellant-petitioner Jeffrey M. Reynolds appeals the denial of his petition for judicial review of the suspension of his driver's license. Specifically, he makes the following contentions: 1) IND.CODE § 9–30–6–10(f) improperly places the burden of proof on the licensee to show that his license was improperly suspended; 2) Article 1, Sections 19 and 20, of the Indiana Constitution and the Sixth and Seventh Amendments to the United States Constitution guarantee Reynolds a jury trial on his refusal to submit to a chemical breath test; and 3) the evidence did not show that he refused to submit to a chemical breath test.

### *FACTS*

On July 8, 1997, State Trooper Loren Brooks was patrolling State Road 66 in Posey County at approximately 1:15 a.m., when he observed Reynolds pass him with his bright lights activated. As Trooper Brooks began to follow Reynolds, he noticed that he was driving in a "slow weave." Record at 62. Trooper Brooks then stopped Reynolds' vehicle and approached him. He noticed that his speech was slurred, his eyes were bloodshot and his breath smelled of alcoholic beverages. R. at 65. Reynolds then submitted to a portable breath test which registered .1118. R. at 27. Immediately thereafter, Reynolds was arrested and informed that refusing to submit to a chemical breath test would result in the suspension of his driving privileges for one year. R. at 68–69. Reynolds was then transported to the Posey County Jail, where he failed to give an adequate breath sample on four different occasions.

That same day, Trooper Brooks filed a probable cause affidavit with the county prosecuting attorney, indicating that Reynolds had been informed of the Implied Consent Law but refused a chemical breath test

at the jail by failing to provide a sufficient breath sample.[1] On July 22, 1997, the trial court reviewed the probable cause affidavit and determined that there was probable cause that Reynolds had operated his vehicle while intoxicated.[2] Thereafter, pursuant to I.C. § 9–30–6–8, the court recommended that Reynolds' driver's license be suspended immediately.

On August 5, 1997, Reynolds filed a petition for judicial review of his license suspension, claiming that he did not refuse a chemical breath test and that he had attempted to provide a sufficient breath sample but was unable to do so "for reasons not known to him." R. at 16. Reynolds also asked the court to submit to the jury the issue regarding his refusal.

Despite Reynolds' request, on September 5, 1997, a hearing was held before the bench. During the hearing, Reynolds testified that, although he had attempted to take the chemical breath test after his arrest, his asthma prevented him from doing so. R. at 43. However, on cross-examination Reynolds admitted that he did not tell any of the officers on July 8 that he was having difficulty breathing. He also conceded that he had not used his inhaler that day. R. at 44. Thereafter, the trial court denied Reynolds' petition and Reynolds now appeals.

## DISCUSSION AND DECISION

### I. Constitutionality of I.C. § 9–30–6–10(f)

First, Reynolds contends that I.C. § 9–30–6–10(f), which requires a defendant to show, by a preponderance of the evidence, that the trial court's suspension of his license was erroneous, is unconstitutional. Specifically, he argues that the provision improperly places the burden of proof on the licensee,

rather than the State, in violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution[3] and Article 1, Section 12, the State Due Course of Law provision.[4]

■ Both the Due Process Clause of the United States Constitution and the Due Course of Law provision of the Indiana Constitution prohibit state action which deprives an individual of life, liberty or property without due process. *Indiana High School Athletic Ass'n v. Carlberg*, 694 N.E.2d 222, 241 (Ind.1997). Under each provision, a party must first demonstrate that he has an interest which is entitled to protection. *Id.* In the instant case, Reynolds contends and we agree that his driver's license is a protected property interest. *See Bell v. Burson*, 402 U.S. 535, 539, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971) (individual cannot be deprived of driver's license without procedural due process); *Ruge v. Kovach*, 467 N.E.2d 673, 678 (Ind. 1984) (same); *Heying v. State*, 515 N.E.2d 1125, 1128 (Ind.Ct.App.1987) (same), *trans. denied.*

■ However, our inquiry does not end there. We must still determine what process Reynolds was entitled to before his license was suspended. In making such determination, we use a balancing test which takes into consideration an individual's private interest, the State's interest and the risk of erroneous deprivation if the current procedure is continued to be used. *Ruge*, 467 N.E.2d at 678–80. Here, the private interest involved is Reynolds' loss of his license for one year and the hardship which results from that loss. For example, the court in *Ruge*, although addressing a different issue, noted the inconvenience and hardship which results from the loss of a driver's license and described that

---

1. The following day, the State charged Reynolds with two counts of Operating a Motor Vehicle While Intoxicated, one as a Class A Misdemeanor under IND CODE § 9–30–5–2, and the other as a Class D felony, under I.C. § 9–30–5–3, due to a previous conviction. Following a jury trial on August 13, 1997, Reynolds was acquitted of those charges.

2. Pursuant to I.C. § 9–30–6–8(c), the court's determination occurred during Reynolds' initial hearing on the criminal charges.

3. The Due Process Clause of the Fourteenth Amendment states that "[n]o State shall ... deprive any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV, § 1.

4. The Due Course of Law provision provides that "every person, for injury done to him in his person, property, or reputation, shall have remedy by due course of law." IND. CONST. art. 1, § 12.

loss as "substantial." *Id.* at 678. However, the *Ruge* court also noted that the State had a "compelling" interest in keeping the roads safe and avoiding fiscal and administrative burdens in the license suspension procedures. *Id.* at 680–81. Because we find both interests to be substantial, we turn to the third factor, the risk of erroneous deprivation.

According to Reynolds, placing the burden of proof on the licensee to show that he did not refuse to submit to a chemical breath test creates the risk of erroneously depriving that person of his license because the police officers are likely to misrepresent whether a licensee has refused to submit to a chemical test. Thus, Reynolds contends that the State should sustain the initial burden of showing that the licensee refused the chemical breath test at the judicial hearing. We disagree.

When a driver refuses to submit to a chemical breath test, the parties who are likely to be present when that event occurs are the licensee, the arresting officer and possibly a breath test operator, if that person is different from the arresting officer. Thus, the determination of whether the licensee refused to submit to a chemical breath test will be based on the testimony of those participants. In compliance with the Implied Consent Statute, one of those participants, the arresting officer, is required to file with the prosecuting attorney an affidavit, setting forth whether a licensee has refused to submit to a chemical breath test. I.C. § 9–30–6–7(b)(2). Although Reynolds contends that there is a substantial risk that the officer is likely to misrepresent this fact, our United States Supreme Court has specifically found that the risk of deliberate misrepresentation by a reporting officer is "insubstantial." *Mackey v. Montrym,* 443 U.S. 1, 14, 99 S.Ct. 2612, 61 L.Ed.2d 321 (1979). The *Mackey* court further found that because a police officer is personally subject to civil liability for an unlawful arrest and to criminal penalties for wilful misrepresentation, he has an incentive to accurately determine and report the facts. *Id.* Thus, we are not prepared to

say that there is a substantial risk that an officer will misrepresent whether a licensee refused to submit to a chemical breath test.

Further, once the affidavit, indicating that the licensee refused to submit to a chemical test, has been filed by the officer, the bureau of motor vehicles is required to suspend the person's driving privileges. I.C. § 9–30–6–9(a). As a result, at the time the licensee is before the court on his petition for judicial review of his license suspension, the State has met its initial burden of showing that the licensee has refused through the affidavit. Thus, even if the State were given the burden of proof at the judicial hearing, its evidence would likely consist of the same information set forth in the affidavit, which, at the most, could be corroborated by a breath test operator, if that person was different from the arresting officer. Thus, we fail to see how placing the burden on the State at the hearing would substantially reduce the risk of erroneously depriving an individual of his license. Further, we note that during the hearing the licensee has the ability to present evidence on his behalf and to cross-examine the arresting officer and/or breath test operator. Thus, in light of the fact that the Due Process Clause does not mandate that all governmental decision making result in error-free determinations, or that procedures used be so comprehensive as to prevent the possibility of error, *see Ruge,* 467 N.E.2d at 679, we cannot say that placing the burden of going forward with the evidence at the judicial hearing, creates a substantial risk of erroneously depriving an individual of his license. As a result, I.C. § 9–30–6–10(f) does not violate the Due Process Clause of the United States Constitution or the Due Course of Law provision of the Indiana Constitution.[5]

## II. Right to Jury Trial

Next, Reynolds contends that the trial court erred by denying his request for a jury trial on the issue of whether he refused to submit to a chemical test. Specifically, he

---

5. Reynolds also argues that I.C. § 9–30–6–10(f) violates the Equal Protection Clause of the United States Constitution. However, he has not presented a cognizable claim on appeal and,

therefore, has waived this issue. *See Burnett v. Cincinnati Ins. Co.,* 690 N.E.2d 747, 749 (Ind.Ct. App.1998).

argues that the court's refusal denied him a jury trial under the Sixth and Seventh Amendments to the United States Constitution and Article 1, Sections 19 and 20 of the Indiana Constitution.

■ Initially, we note that the Seventh Amendment, which preserves an individual's jury trial right in "Suits at common law, where the value in controversy shall exceed twenty dollars" does not apply to the states. *See Edwards v. Elliott*, 21 Wall. 532, 88 U.S. 532, 557, 22 L.Ed. 487 (1874) (Seventh Amendment does not apply to trials in state courts); *E.P. v. Marion County Office of Family and Children*, 653 N.E.2d 1026, 1030 (Ind.Ct.App.1995) (Seventh Amendment to the United States Constitution is not applicable to trials in this state's courts). Additionally, we note that, although the Sixth Amendment and Article 1, Section 19, guarantee the right to a jury trial, they do so only in criminal cases. *See* Sixth Amendment ("In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial ..."); Article 1, Section 19 ("In all criminal cases whatever, the jury shall have the right to determine the law and the facts"). However, a proceeding during which an individual's license is suspended is not a criminal but a civil proceeding which is quasi-administrative in nature. *Ruge*, 467 N.E.2d at 677; *Steward v. State*, 436 N.E.2d 859, 862 (Ind. Ct.App.1982), *trans. denied.*

Finally, we conclude that Article 1, Section 20, does not entitle Reynolds to a jury trial. This provision provides that "[i]n all civil cases, the right of trial by jury shall remain inviolate." In interpreting this section, we have previously held that the jury trial right is preserved only if an action was triable by a jury at common law. *E.P.*, 653 N.E.2d at 1030. Here, Reynolds' action involved a petition to review his license suspension under the Implied Consent Law. This action arises from a relatively recent statutory scheme which is quasi-administrative in nature and, therefore, was not triable by a jury at com-

mon law. As a result, Reynolds was not entitled to a jury trial on this issue.[6] *See Owens v. State ex rel. VanNatta*, 178 Ind. App. 406, 409, 382 N.E.2d 1312, 1314 (1978) (licensee not entitled to jury trial under Habitual Traffic Offender Act whereby habitual traffic offender's driver's license is revoked, because process is administrative hearing, not a civil or criminal trial, and not type of criminal or civil proceeding for which jury trial was provided at common law).

### III. Denial of Petition for Judicial Review

Finally, Reynolds contends that the trial court erroneously denied his petition for judicial review of his license suspension. Indiana's Implied Consent Law provides that a person who operates a vehicle impliedly consents to submit to a chemical test as a condition of operating a vehicle in Indiana. I.C. § 9–30–6–1. Although Reynolds concedes that the failure to furnish an adequate breath sample constitutes a refusal to submit to a chemical test and supports a license suspension, he, nevertheless, argues that he provided an adequate sample when he submitted to the portable breath test when he was initially stopped. In an alternative argument, Reynolds argues that he was unable to provide a sufficient breath sample for the four chemical breath tests administered at the jail because he suffered from an asthmatic condition.

■ Initially, we note that Reynolds' submission to the portable breath test he took when he was initially pulled over was not sufficient to comply with the Implied Consent Law. According to the Implied Consent Law, a person is required to submit to a "chemical test" which has been properly certified under I.C. § 9–30–6–5(a). I.C. § 9–30–6–7. Thus, Reynolds' submission to the portable breath test during the initial stop did not satisfy his duty under the Implied Consent Law. Furthermore, the Implied Consent

---

**6.** We also note that the right to a trial by jury may be provided by statute. *See Owens v. State ex rel. VanNatta*, 178 Ind.App. 406, 410, 382 N.E.2d 1312, 1318 (1978) (constitutional right to jury trial may be enlarged, but not diminished by statute). However, I.C. § 9–30–6–10, which al-

lows a party to petition for judicial review of his license suspension, does not confer upon a licensee that right. Rather, it provides only that "[a] person whose driving privileges have been suspended under ... this chapter is entitled to a prompt *judicial* hearing" (emphasis added).

Law also requires a licensee to submit to "*each* chemical test" offered by an officer in order to fully comply. I.C. § 9–30–6–2(a)(2), (d) (emphasis added). Because Reynolds failed to provide an adequate breath sample for the four tests administered at the jail, he did not fully comply with the statute.

We similarly find Reynolds' contention regarding his inability to provide an adequate breath sample unavailing. According to Reynolds, the evidence reveals that he attempted to provide a breath sample because he attempted to blow into the machine, complied with all other requests during the initial stop and at the jail, and had provided a sufficient breath sample on a prior occasion. Despite Reynolds' contentions, we find his argument to be merely an invitation to reweigh the evidence which we are not permitted to do on appeal. *See Zakhi v. State,* 560 N.E.2d 683, 686 (Ind.Ct.App.1990) (on appeal from denial of petition for judicial review of license suspension, we do not reweigh the evidence or the credibility of the witnesses). Further, there is sufficient evidence in the record which reveals that Reynolds refused to provide an adequate breath sample. R. at 79, 81.

Judgment affirmed.

SULLIVAN and KIRSCH, JJ., concur.