## THE STATE *v.* CHENOWETH.

[No. 19,162. Filed June 7, 1904.]

HOMICIDE.—*Involuntary Manslaughter.—Directing Verdict.*—Where the court directed a verdict for defendant charged with involuntary manslaughter on the ground of insufficiency of the proof and not upon the insufficiency of the indictment, the sufficiency of the indictment is not presented by the record. *pp. 99, 100.*

BILL OF EXCEPTIONS.—*Time for Filing.*—Where a criminal cause was tried at the September term of court and no time given the State as provided by ₹1916 Burns 1901, to file a bill of exceptions, and the bill was not filed until the 2d day of the November term, such bill is not in the record, and can not be considered. *pp. 99, 100.*

CHRISTIAN SCIENCE.—*Dowieism.—Justification for Crime.*—Law and decisions in reference thereto commented on. *pp. 100–103.*

From Clinton Circuit Court; *J. V. Kent,* Judge.

Prosecution by the State of Indiana against Joseph Chenoweth for involuntary manslaughter for permitting his infant child to die without medical attention. From a judgment on a verdict of acquittal directed by the court for failure of evidence, the State appeals. *Affirmed.*

*W. L. Taylor,* Attorney-General, *W. S. Sims,* Pros. Atty., *C. C. Hadley, Merrill Moores, Rowland Evans, H. C. Sheridan, L. J. Curtis* and *W. F. Palmer,* for State.

*M. A. Morrison, W. A. Staley, Guenther & Clark* and *W. R. Moore,* for appellee.

JORDAN, C. J.—Appellee was tried in the lower court before a jury upon an indictment for the commission of the crime of involuntary manslaughter. At the close of the evidence introduced by the State, the court ruled thereon that, as a matter of law, it was not sufficient to authorize a conviction of the defendant, and directed the jury to return a verdict of not guilty, which was accordingly done. A judgment was rendered on the verdict, discharging the defendant. From this judgment the State appeals, and has assigned as errors that the court erred in holding that the indictment did not charge a public offense, and in directing a verdict of not guilty upon the evidence.

The indictment, among other things, charged that the appellee was the father of, and had the custody of one John D. Chenoweth, an infant child of the tender age of nine months, and that said infant on and from the 27th day of August, 1899, at the county of Clinton and State of Indiana, was sick, feeble, and in a helpless condition, and was in great need of the services of a physician and medical attention and treatment; that the appellee had sufficient means and was able to secure the services of a physician to attend to his said child and give it proper medical treatment in its then sick and feeble condition, but that he feloniously and wilfully neglected and refused to provide said child with medicine which was necessary for it in its sick condition, but permitted it to linger and languish from the said 27th day of August until the 10th day of September, 1899, on which day it then and there at the said county and State, by reason of the said mortal sickness, died, wherefore it is alleged that the defendant "feloniously did involutarily kill and slay" said John D. Chenoweth.

Counsel for appellee urge that this appeal on the part of the State can not be sustained for two reasons: (1) The indictment does not charge a public offense; (2) the evi-

dence is not properly in the record. There is nothing in the record to disclose that the court held that the indictment did not charge a public offense, except the following concession which is found contained in part of the charge which the court gave to the jury as follows: "Again, if we concede that a crime has been charged, I think.I would be fully justified in directing a verdict of not guilty on the evidence itself. I do not believe that the State has proved the defendant guilty by any means. None of the physicians who testified could give any certain assurance that. the child could have been cured in case a competent physician had been called, and it is exceedingly uncertain if its life could have been prolonged to any appreciable extent. Of course, if one by his unlawful act accelerates the death of another, he is guilty, but how can this jury say from the evidence that the failure to call a physician accelerated the child's death?"

The indictment in question is loosely drafted, and may be said to be open to objections; but the court did not direct a verdict upon the ground of the insufficiency of the pleading, but for the reason that it held that the evidence introduced upon the part of the State would not sustain a conviction. Under the circumstances, the sufficiency of the indictment can not be reviewed, as that question is not presented by the record.

The trial court, in making up the record in order to present for review in this appeal the question reserved by the State, states that there was evidence introduced which tended to prove, among others, the following facts: Appellee was the father of the deceased child, and had the custody thereof. The child was eight months old, and in July, 1899, it became sick. It had a cough—something in the nature of whooping cough. In fact, the defendant and his wife believed that the child was afflicted with whooping cough. It continued gradually to grow worse and lingered until September 10, 1899, when it died at its

father's house in Clinton county, Indiana.  A post-mortem examination disclosed that the child died of what the physicians denominated "double bronco-pneumonia."  The defendant had means sufficient to have employed a physician to attend the child in its sickness, and there were numerous physicians within a mile and a half of his home.  It is shown that he refused to call a physician to attend the child, and refused to give it any medicine or to seek medical advice in any manner, although neither he nor his wife, nor anyone who nursed the child during its sickness, had any knowledge of medicine or diseases.  The excuse which the defendant offered for his refusal to call a physician or to give the child medicine was because he believed in "divine healing," and offered and cited the "Word of God" as a justification of his course of conduct.  It is shown that he procured an "elder" to come to his house on September 4, 1899, and this elder appears to have annointed the child with oil, and prayed to God for the healing thereof.  The defendant (appellee herein) also communicated with one John Alexander Dowie, of Chicago, and procured him to pray to God for the restoration of the child.  The neighbors of the defendant advised him to call a physician, but he refused to heed their advice.  About two weeks prior to the death of the child he informed one of his neighbors that it was "going down all the time."  Medical experts testified on the trial that had a competent physician been called, and proper medicine administered, the life of the child would at least. have been prolonged, but to what extent was not stated. They further testified that when the disease of bronco-pneumonia afflicted a child of the age of eight months, it usually proved fatal.  The expert witnesses were unable to state whether in case a physician had been called to attend the child after bronco-pneumonia developed its life could have been saved.

The learned counsel for the State have, in their briefs, very ably discussed the question which they seek to present,

and have cited us to many authorities in support of their contention that the appeal herein should be sustained. They argue that under the facts as shown, and the law applicable thereto, appellee, in his refusal to provide his infant child, when sick, with necessary medicine and the services of a physician, violated a duty which, under the law, he owed to said infant and helpless child; and that his neglect to make the provisions in question was an unlawful act, both at common law and under the statutes of this State. It is contended that his course of conduct in the matter is forbidden and rendered unlawful by §2240 Burns 1901, which reads as follows: "Any person who shall cruelly ill treat, abuse, overwork or inflict unnecessary cruel punishment upon any infant or minor child, and any person having the care, custody or control of any minor child, who shall wilfully abandon or neglect the same, shall be guilty of a misdemeanor, and upon conviction thereof by any justice of the peace, mayor, police judge or criminal court, shall be fined not less than $5 nor more than $50 for each offense, to which may be added imprisonment not exceeding thirty days." It is asserted that appellee's wilful neglect, under the circumstances, to provide necessary medical treatment for his child, as shown, constituted the commission of an unlawful act, under this statute, which led up to and caused the death of the child in question. Hence it is argued that he, under the law, is guilty of the crime of involuntary manslaughter. It is contended that his refusal to procure a physician or to provide in any manner the necessary medicine for the sick child was a wilful neglect, within the meaning of the above statute.

We regret that we are prevented by the condition of the record in this appeal from deciding the important public question which the State seeks to have reviewed, and thereby determine and settle in this State the law applicable to cases like the one at bar. It is certainly true that the conduct or acts of appellee in wholly refusing to secure the assist-

State *v.* Chenoweth.

ance of a physician, or to have any medicine administered to his helpless minor child in its sick condition, in order that its life might be either preserved or prolonged, should be condemned and punished by law. It is undisputed that medicine, as a science, is now, and has been for a long period of time, generally recognized by law, and the efficacy of medical treatment by a skilled and competent physician is universally conceded. The religious doctrine or belief of a person can not be recognized or accepted as a justification or excuse for his committing an act which is a criminal offense under the law of the land. If it could, then the practice of polygamy or plural marriages might be justified or sustained on the ground of religious belief. See the following authorities: 8 Am. and Eng. Ency. Law (2d ed.), 298, 299; 20 Am. and Eng. Ency. Law, 769 *et seq.; Reynolds* v. *United States* (1878), 98 U. S. 145, 25 L. Ed. 244; *Miles* v. *United States* (1881), 103 U. S. 304, 26 L. Ed. 481; *Specht* v. *Commonwealth* (1848), 8 Pa. St. 312, 49 Am. Dec. 518; *Commonwealth* v. *Plaisted* (1889), 148 Mass. 375, 19 N. E. 224, 2 L. R. A. 142, 12 Am. St. 566; *Reg.* v. *Downes* (1875), 13 Cox C. C. 111; *Reg.* v. *Senior* (1899), 1 Q. B. 283; 1 Bishop, Crim. Law (8th ed.), §§344, 345; *People* v. *Pierson* (1903), 176 N. Y. 201, 68 N. E. 243.

An examination discloses that the contention of appellee's counsel that the bill of exceptions containing the instruction given by the court whereby a verdict was directed in favor of appellee, and also the facts which the court stated there was evidence to establish, is not in the record must be sustained. Appellee was tried at the September term, 1899, of the Clinton Circuit Court, and on the thirty-eighth judicial day of that term judgment was rendered discharging him without day. No time appears to have been allowed the State by the court for filing beyond the term the bill of exceptions in question, as provided by §1916 Burns 1901. The bill was not filed until the second judicial day of the

November term, 1899, of the Clinton Circuit Court. It is settled by repeated decisions that the bill, under the circumstances, is not properly in the record, and nothing therein embraced can be considered in this appeal. *Robards* v. *State* (1899), 152 Ind. 294, and cases cited; *Utterback* v. *State* (1899), 153 Ind. 545, and cases there cited.

Although we can not, for the reasons stated, pass upon the merits of the question, it may not be improper, and perhaps will be useful, if we refer to some of the statutes and decisions pertaining to the question attempted to be presented in this appeal. In *Reg.* v. *Wagstaffe* (1868), 10 Cox C. C. 530, it was held, that "where from conscientious religious conviction that God would heal the sick, and not from any intention to avoid the performance of their duty, the parents of a sick child refuse to call in medical assistance, though well able to do so, and the child consequently dies, it is not culpable homicide." This case was decided in January, 1868, and in July of that year the first act in England upon the subject, so far as we are aware, was enacted. 31 and 32 Vict., chap. 122, §37. This act made it an offense for any parent wilfully to neglect to provide medical aid for his child in his custody and under the age of fourteen years, whereby the life of such child should be, or was likely to be seriously injured. In the case of *Reg.* v. *Downes, supra,* it was held to be manslaughter where the child died from such neglect. In 1894 this act was amended by 57 and 58 Vict., chap. 41, so as to provide, among other things, that "if any person over the age of sixteen years who has the custody, charge, or care of any child under the age of sixteen years, wilfully * * * neglects * * * such child, * * * in a manner likely to cause such child unnecessary suffering, or injury to its health * * * that person shall be guilty of a misdemeanor."

In *Reg.* v. *Senior, supra,* the defendant was charged and convicted of manslaughter of his infant child, of which he had the custody. He was a member of a sect called the

"Peculiar People," who objected, on religious grounds, to calling in medical aid, and to the use of medicine. As grounds for their religious belief, they relied on the Epistle of James, chap. 5, verses 14, 15. It appears in that case that the defendant wilfully and deliberately abstained from providing medical aid and medicine which were necessary for his infant child, of the age of eight or nine months, who was suffering from diarrhea and pneumonia; he at the time knowing that it was dangerously ill. It was shown that medical aid would have prolonged and probably saved the child's life, and that the defendant had the means to supply the same. As there was evidence in that case to establish that the defendant had wilfully neglected the child, in a manner likely to injure its health, within the meaning of the act in controversy, and having thereby caused or accelerated its death, the court adjudged, under the circumstances, that he was rightly convicted of manslaughter. In that appeal Lord Russell, C. J., in his opinion said: "At the present day, when medical aid is within the reach of the humblest and poorest members of the community, it can not reasonably be suggested that the omission to provide medical aid for a dying child does not amount to neglect."

In *Rex* v. *Brooks* (1902), 9 Brit. Col. 13, a conviction of manslaughter growing out of the neglect to provide minor children with the necessaries of life was affirmed. The evidence in that case established that John Rogers belonged to a sect called "Catholic Christians in Zion," or "Zionites." One of the tenets of this sect is that it is contrary to the teachings of the Bible, and therefore wrong, to have recourse to medical aid and drugs in case of sickness. As a consequence of this belief, the accused omitted to provide his children with medical attendance and appropriate medical remedies when they were sick with diphtheria. The children in question were both under the age of six years, and were members of their father's family, and were wholly dependent upon him for support. He knew that they had

diphtheria, and that it was a dangerous and contagious disease. His circumstances were such that he could have paid for medical attendance and medical remedies. It was proved that the disease caused the death of the children, and that the ordinary remedies would have prolonged their lives, and in all probability would have resulted in their complete recovery. The court held in that case that medical attendance and remedies are necessary, and that anyone legally liable to provide such was criminally responsible for his neglect to do so, both under the statute and at common law. The court further held that the conscientious belief that it is against the teachings of the Bible, and therefore wrong, to have recourse to medical attendance and remedies, furnished no excuse or justification for the defendant's neglect to provide them.

In the case of *People* v. *Pierson* (1903), 176 N. Y. 201, 68 N. E. 243, the defendant was indicted for violating a section of the penal code of the state of New York, which provides that "A person who wilfully omits, without lawful excuse, to perform a duty, by law imposed upon him, to furnish food, clothing, shelter, or medical attendance to a minor * * * or neglects, refuses or omits to comply with any provisions of this section, * * * is guilty of a misdemeanor." In that case the defendant was charged under this statute with having omitted, without lawful excuse, to perform a duty imposed upon him by law, in failing to furnish medical attendance to his minor child, and in refusing to allow her to be attended by a regular physician, when she was sick with, and suffering from the disease of, pneumonia. The excuse offered by the father of the child for not calling a physician was that he believed in divine healing, which could be accomplished by prayer. He stated that he belonged to the "Christian Catholic Church 'of Chicago'"; that he did not believe in physicians, and that his religious faith led him to believe that the child would get well by means of prayer. He believed in diseases, but believed that

religion was a cure of all disease.    This excuse or justification on the part of the defendant for violating the statute in question was not sustained by the court, and his conviction below was affirmed.    The court in that appeal, in the course of its opinion, cited Schouler, Domestic Relations (5th ed.), 668, where the author, speaking upon the subject of what constitutes necessary maintenance, says:  "Food, lodging, clothes, medical attendance, and education, to use concise words, constitute the five leading elements in the doctrine of the infant's necessaries."  Other authorities might be cited, but the above will suffice.

The question, as previously said, is one of public importance, and, if there is an absence of law in this State in respect to a case like this, the legislature should promptly deal with the matter by proper legislation.

For the reasons stated in regard to the record, the judgment must be affirmed, without considering the merits of the question.

Judgment affirmed.

Gillett, J., concurs in the result.