Peter W. TERPSTRA, II, Appellant,

v.

STATE of Indiana, Appellee.

No. 25A04–8802–IF–68.

Court of Appeals of Indiana, Fourth District.

Oct. 20, 1988.
Rehearing Denied Dec. 15, 1988.

---

Peter W. Terpstra, II, Rochester, pro se.

Linley E. Pearson, Atty. Gen., Amy Schaeffer Good, Deputy Atty. Gen., Office of Atty. Gen., Indianapolis, for appellee.

MILLER, Judge.

Defendant-appellant Peter W. Terpstra, II, was charged with violating I.C. § 9–1–4–5, 7, 20 and 40. He appeals the judgment of the Fulton County Court finding him guilty of all four charges and fining him $500.00 on each count plus costs. Terpstra admittedly failed to properly register his truck, obtain a license plate or driver's license. He claims in his brief that compliance with these laws violates his religious beliefs, stating, "Contracts with sovereigns other than the Supreme Sovereign (Christ Jesus) interfere and impair the obligation and duty to the defendant's Supreme Being. The acceptance of benefits from a foreign sovereign is repugnant to the instruction in Deuteronomy and Exodus, and the use of a number for identification and control is a violation of the teachings and ordinances of the Biblical book of Revelation."

We affirm.

## ISSUES

I. Whether the trial court erred by permitting the State to bring charges against Terpstra by information rather than by complaint.

II. Whether the trial court erred in denying Terpstra a jury trial.

III. Whether I.C. 9–1–4–5, 7, 20 and 40 violate Terpstra's First Amendment right to the free exercise of religion and his right to travel.

## FACTS

The pertinent facts in this appeal are not in dispute. On July 31, 1987, Terpstra was driving his truck along public roads in Fulton County, Indiana. There was no license plate displayed on his vehicle, however, Terpstra had placed an identification tag marked "Pete II" on the back tailgate. While driving in this manner, Terpstra's vehicle was stopped by Officer Roy D. Calvert of the Rochester Police Department. Officer Calvert asked Terpstra to produce a valid driver's license and vehicle registration. Terpstra could not produce either item. Officer Calvert then cited Terpstra for driving without a driver's license and a vehicle registration. On July 10, 1988, Terpstra was formally charged with violating I.C. § 9–1–4–5, 7, 20 and 40, that is, (1) failure to display a certificate of registration, (2) failure to display a registration plate, (3) display of a false or fictitious registration plate, and (4) failure to have a driver's license in possession. A bench trial was held on November 18, 1987. At trial, Terpstra admitted to not displaying a license plate, not having a driver's license in his possession, not displaying a certificate of registration, and having his name on a plate that resembles a license plate. He was found guilty of all four charges

and fined the maximum penalty of $500.00 on each count plus costs.

## DECISION

### ISSUE I

■ The first issue raised by Terpstra is whether the trial court erred by permitting the State to bring charges against him by information rather than by complaint. The procedure for the prosecution of infractions in Indiana is civil in nature.[1] The proceedings are to be conducted in accordance with the Ind. Rules of Trial Procedure,[2] the plaintiff must prove the commission of the infraction by a preponderance of the evidence,[3] and the punishment for an infraction is a fine.[4] There is no provision for any criminal procedures. *Wirgau v. State* (1983), Ind.App., 443 N.E.2d 327, 330. I.C. § 34–4–32–1(e) provides that a complaint and summons may be used for any infraction or ordinance violation.[5] In this case the charges against Terpstra were brought by an information and he was served with a criminal summons. Terpstra contends that this criminal format is in violation of I.C. § 34–4–32–1 and, as such, the charges against him should have been dismissed. We agree that Terpstra should have been served with a complaint and summons, however, the fact that the charges were brought by an information and criminal summons does not constitute reversible error.

Initially we note that the language contained in the information charging Terpstra clearly detailed the offenses with which he was being accused. The information correctly cited the offenses as IND.CODE § 9–1–4–5, 7, 20, 40 and the correct statutory language was set forth in explanation of these charges. Our courts have held that defects or imperfections in charging instruments are grounds for reversal only

---

1. Previously, all traffic offenses were criminal in nature. Under the old statute, before accepting a guilty plea to any traffic offense (except parking, standing or non-moving offenses) the court had to inform the defendant of his criminal rights. *Wirgau v. State* (1983), Ind.App., 443 N.E.2d 327, 330.

2. I.C. § 34–4–32–1(c).

3. I.C. § 34–4–32–1(d).

4. I.C. § 34–4–32–4.

5. I.C. § 34–4–32–1
 (e) The complaint and summons in I.C. § 9–4–7–4(b) may be used for any infraction or ordinance violation.

where they prejudice substantial rights of the defendant. *Hestand v. State* (1986), Ind., 491 N.E.2d 976, 980; *Alvers v. State* (1986), Ind.App., 489 N.E.2d 83, 86. In this case, "the defect" was that the charging instrument was an "Information" rather than a "Complaint." However, this "defect" did not prejudice Terpstra. Terpstra was aware of the charges against him and has not shown that he was misled, in any manner, in the preparation of his defense.

The crux of Terpstra's argument is that the State's use of this improper procedure alone, mandates that the charges against him be dismissed. In response to this argument we find the reasoning of "illegal arrest" cases helpful. In *Scott v. State* (1980), Ind.App., 404 N.E.2d 1190, 1192, the defendants were charged and convicted of the crime of Unlawful Possession of Marijuana. On appeal, they argued that their charges should have been dismissed because the court found that no probable cause existed for their arrests. This court acknowledged that the defendants' arrests were invalid but stated:

> "The illegality of an arrest, however, is of consequence only as it affects the admission of evidence obtained through a search incident to the arrest. *Williams v. State* (1973), 261 Ind. 385, 304 N.E.2d 311; *Martin v. State* (1978), [176] Ind. App., [99] 374 N.E.2d 543. It has no bearing upon the guilt or innocence of the accused. *Martin, supra.* The jurisdiction of a court over the defendant is not terminated by an illegal arrest. *Dickens v. State* (1970), 254 Ind. 388, 260 N.E.2d 578. An invalid arrest does not affect the right of the State to try a case nor does it affect the judgment of conviction. *Denson v. State* (1975), 263 Ind. 315, 330 N.E.2d 734; *Martin, supra.* There was no evidence, admitted at trial, which was obtained as a result of the illegal arrests. Their convictions must stand."

In *Felders v. State* (1987), Ind., 516 N.E.2d 1, 2, a defendant, appealing his murder conviction, made a similar argument. Our supreme court quoted the above language from *Scott, supra* and stated that even if the police lacked probable cause to arrest this defendant, it would not affect the legality of his conviction. 516 N.E.2d at 2.

In this case, the State has essentially used an "irregular" procedure to "arrest" and charge Terpstra with traffic infractions. However, under *Scott* and *Felders,* the use of this "irregular" procedure does not affect the right of the State to try this case nor does it affect the jurisdiction of the court to hear the case. The use of this "irregular" or improper procedure is of consequence only as it affects the rights of Terpstra to be aware of the charges against him and to prepare a defense. As noted earlier, Terpstra was properly notified of the charges against him and he was not misled in the preparation of his defense. Thus, we find no error on this issue.

## ISSUE II

 The next issue raised by Terpstra is whether the trial court erred in denying him a jury trial. Terpstra is proceeding in this litigation *pro se.* As such, he has not had the benefit of trained legal counsel. However, a litigant who proceeds *pro se* is held to the same established rules of procedure that trained legal counsel is bound to follow. *Owen v. State* (1978), 269 Ind. 513, 381 N.E.2d 1235, 1239; *State ex rel. Medical Licensing Board v. Stetina* (1985), Ind. App., 477 N.E.2d 322, 328; *Terpstra v. Farmers and Merchants Bank* (1985), Ind. App., 483 N.E.2d 749, 754. In civil proceedings a demand for a jury trial must be made in accordance with Ind.Rules of Procedure, Trial Rule 38(B). T.R. 38(B) provides that any party may demand a trial by jury by filing with the court, and serving upon the other parties, a demand in writing any time after the commencement of the action, but not later than ten (10) days after the first responsive to the pleading to the complaint is filed.[6] T.R. 38(D) provides

---

6. If no responsive pleading is filed or required, the written demand must be made within ten (10) days after the time such pleading otherwise would have been required. T.R. 38(B). T.R. 6(C) requires that when a responsive pleading is necessary it must be filed within twenty (20)

that the failure of a party to serve a demand as required by this rule and to file it as required by Rule 5(D) constitutes a waiver by him of a trial by jury. In this case, Terpstra failed to comply with T.R. 38(B). He did not demand a jury trial in writing and waited until the day of the trial before orally requesting one.

"MR. TERPSTRA

Prior to moving forward, Your Honor, there are a number of administrative procedural matters which must be taken care of in order for me to experience due course of justice. I notice here today, Your Honor, that there is no jury.

COURT

That's absolutely right. Because no jury was required in this case. This is a civil case, and there was no timely request for a jury.

MR. TERPSTRA

Well, I'd object to that Your Honor."

(Record, p. 2).

One who proceeds *pro se* must accept the consequences of his actions. *Morvilius v. Delaware Circuit Court* (1961) 241 Ind., 704, 171 N.E.2d 695, 696; *Terpstra, supra.* Since Terpstra failed to comply with Trial Rule 38(B) he waived his right to a trial by jury. The trial court was correct in denying Terpstra a jury trial.

## ISSUE III

Finally, Terpstra argues that I.C. 9–1–4–5, 7, 20 and 40 violate his First Amendment right to the free exercise of religion and his right to travel. Terpstra's argument is as follows:

"From September of 1964 until October of 1986, the defendant, Peter W. Terpstra II, held a valid Indiana driver's license. During that time he was a citizen of the United States, the State of Indiana, and residing in the county of Fulton. During that time he committed no traffic offenses, nor did he injure anyone with his use of an automobile. Before and during the same period defendant Terpstra studied the Bible and pur-

sued his sincerely held religious belief that his primary citizenship was in heaven, and his duty to a Supreme Being (Christ Jesus) was the highest duty and loyalty of his tenure on earth.

As a result of the progressive knowledge gained by his diligent search of the scriptures and the comparison of their teaching and instruction with man's laws and ordinances, the defendant came to realize that the Indiana driver's license was a contract based on the voluntary application for, and acceptance of, state benefits. The Social Security number which appears on the license is evidence of voluntary enlistment into a state regulated enterprise and mandates specific performance by the volunteer to the state. Contracts with sovereigns other than the Supreme Sovereign (Christ Jesus) interfere and impair the obligation and duty to the defendant's Supreme Being. The acceptance of benefits from a foreign sovereign is repugnant to the instruction in Deuteronomy and Exodus, and the use of a number for identification and control is a violation of the teachings and ordinances of the Biblical book of revelation.

Upon finding that the making of contracts, the acceptance of benefits, and the use of a control number were within the sphere of prohibitions of the Scriptures and thus violated the defendant's sincerely held religious beliefs and training, the defendant immediately made a solemn declaration of rescission and waiver of benefits and terminated his contracts with all foreign sovereigns. Incidental to his rescission and reudiation of contracts and benefits, the defendant sent his notice of rescission and waiver of benefits to the State of Indiana. This notice of rescission and waiver included the termination of his driver's license, marriage license, birth certificate, and Social Security number. The defendant also terminated his bank accounts and sold whatever possessions he held jointly with any sovereign other

---

days. Thus, the twenty (20) days required by T.R. 6(C) plus the ten (10) days allowed by T.R. 38(B) equals thirty (30) days as a maximum time within which Terpstra could file a request for a jury trial.

than the Supreme Sovereign, Christ Jesus.

Among the items of personal property which the defendant held in joint ownership with the sovereign State of Indiana was a 1977 Ford pickup truck. The defendant sold this truck to a local salvage yard for $30.00 and the salvage owner junked it out and sent the title back to the sovereign State of Indiana. Once the ownership tie to the State of Indiana was severed, the parts were purchased by friends of the defendant, after which the defendant purchased the dissembled parts of the truck from his friends and reassembled them so that he might exercise his inalienable right to travel and make religious pilgrimages on the public highways and roads."

(Appellant's Brief, p. 5, 6).

Terpstra contends that his truck is not a motor vehicle, but rather a "religious conveyance" and that he has a constitutional right to travel in this religious property without being subject to state regulation. (Page 8 of Appellant's Brief). In his brief, Terpstra attempts to distinguish between two classes of citizens: "Enfranchised citizens", who receive benefits from the state and, as such, are subject to state regulation, and "Natural citizens", who are not subject to state regulation, but who nonetheless retain their "inalienable rights." We quote from Terpstra's brief:

"There came a time during the course of the defendant's religious study and training when it became evident that there were two classes of Indiana citizens; those who were natural, and those who were enfranchised by the State.... An individual who has a birth certificate, marriage license, social security number, and driver's license is an enfranchised citizen and not one of common right. The enfranchised citizen is receiving benefits as a result of his state enfranchisement and is subject to state regulation and intervention in his affairs for the health, welfare, and morals, or society ... The defendant, having found that a difference existed between the natural and enfranchised citizen, made a solemn declaration and recision of his enfran-

chisement as a citizen based upon his sincerely held religious beliefs ... The right of a citizen to choose natural rights over enfranchised state granted privileges based upon his sincerely held religious beliefs and training fall within the penumbra of both State and Federally protected constitutional rights.... The Fulton County Trial Court, by finding against the defendant and imposing judgments of $500.00 plus costs on all counts has abrogated the defendant's right to religious expression, his right to travel in furtherance of his right to religious action, and his right to property; all of which are natural and inalienable rights secured by the constitutions of the State of Indiana and United States."

(Appellant's Brief, p. 18, 19, 21, 23).

Terpstra has provided us with authority in support of his arguments. His brief and reply brief are littered with citations to the United States Constitution, the Indiana Constitution, and United States Supreme Court cases. However, in the context in which they are used, his authorities are not legally persuasive. As Judge Staton so aptly noted in *Terpstra, supra*, "A layman who merely extracts a sentence or two from a case containing language believed to be relevant risks the very grave danger of misstating the law or reaching inappropriate legal conclusions" and "A sincere subjective belief by a party as to the correctness of his argument is not enough to insure success when, as here, the arguments are broad, abstract and contrary to law". 483 N.E.2d at 751.

A careful reading of Terpstra's briefs assures us that his beliefs are sincere. He sincerely believes that the Indiana statutes in question unconstitutionally abridge his First Amendment right to freely exercise his religion. In support of his argument, Terpstra directs our attention to *Thomas v. Review Board of Indiana Employment Sec.* 450 U.S. 707, 101 S.Ct. 1425, 67 L.Ed. 2d 624 (1981).

In *Thomas,* a Jehovah's Witness applied for unemployment compensation benefits under the Indiana Employment Security

Act after leaving his job for religious reasons. Indiana denied his claim finding that his voluntary termination was not based upon a "good cause" arising in connection with his work, as required by the Indiana statute. The Supreme Court held that Indiana's denial of unemployment compensation benefits violated this claimant's First Amendment right to the free exercise of religion. However, we believe that Terpstra's reliance on *Thomas* is misplaced. In *Thomas*, the claimant applied for, and was denied, a government benefit otherwise available to the public. In this case, Terpstra did not apply for, and was not denied, an Indiana driver's license or certificate of registration. In this case, Terpstra has violated several Indiana statutes and is now being prosecuted for the same. In our opinion, the case before us is more appropriately analyzed under the reasoning *Reynolds v. United States*, 98 U.S. 145, 25 L.Ed. 244 (1878) and its progeny.

In *Reynolds*, the defendant, a member of the Church of Jesus Christ of Latter-Day Saints (commonly called the Mormon Church) was prosecuted for bigamy. As a defense, the defendant claimed that it was his duty, as a male member of this church, to practice polygamy. The Supreme Court held that although freedom of religion is guaranteed by the Constitution, a religious belief is not a valid defense in a prosecution for bigamy. *Id.* at 166–167. In so ruling, the Court explained that every man is presumed to intend the necessary and legitimate consequences of what he knowingly does. *Id.* at 167. In *Reynolds*, the defendant knew that he had been married and that his first wife was living. He was also aware that there was a law that pro-

hibited his having a second wife. Under these circumstances, the Court said that he was guilty of the crime. *Id.* The Court noted that Reynold's only defense was his belief that the law ought not to have been enacted. *Id.* The Court stated that when the offense consists of a positive act knowingly done, it would be dangerous to hold that the offender might escape punishment because he religiously believed the law which he had broken ought never to have been made. *Id.*

In our case, Terpstra knew that the State of Indiana required him to have a valid driver's license and vehicle registration before driving on public roads in Indiana. In fact, he held both of these items for several years before relinquishing them. Thus, he knowingly violated the statutes in question. Moreover, his only defense is his belief that these statutes violate his religious freedom. Using the language of *Reynolds*, it would be dangerous to hold that Terpstra could escape punishment because he religiously believed that the law he knowingly broke ought never to have been made.[7]

In *Warren v. United States*, 177 F.2d 596 (10th Cir.1949), *cert. denied*, 338 U.S. 947, 70 S.Ct. 485, 94 L.Ed. 584 (1950), the defendant, a member of the Unitarian Church, was convicted of knowingly counseling another, required to register for service in the armed forces, to fail and refuse to register for such service. As a defense, the defendant testified that he believed war to be a great evil, that without compulsory military training war could not be carried on, and that war could be prevented if the draft were not enforced. He stated that he

7. Our supreme court has relied on *Reynolds, supra,* in several opinions. In a prosecution for involuntary manslaughter our supreme court cited *Reynolds* and stated: "The religious doctrine or belief of a person can not be recognized or accepted as a justification or excuse for his committing an act which is a criminal offense under the law of the land." *The State v. Chenoweth* (1904), 163 Ind. 94, 71 N.E. 197, 199. In a Prosecution for bigamy our supreme court cited *Reynolds* and stated: "Criminal intent is not necessary in a prosecution for bigamy, where the defendant, knowing he was married, and that his wife was living, deliberately con-

tracted a second marriage, although impelled thereto by his religious belief. The law of the land is superior to any professed doctrines or beliefs, whether religious, secular, or pagan." *Long v. State* (1922), 192 Ind. 524, 137 N.E. 49, 50. *Reynolds* was again cited in *Board of Zoning A. v. Decatur, Ind. Co. of Jehovah's W.* for the proposition that the concepts of religious freedom embodied in the Fourteenth Amendment have never been construed as absolute rights, beyond reasonable regulation under the state's police power. (1954), 233 Ind. 83, 117 N.E.2d 115, 123 (J. Emmert dissenting).

believed certain laws to be detrimental to man as a whole and therefore, they should be disobeyed. *Id.* at 597–598. The defendant admitted that he advised his stepson not to register for the draft and to go to Canada. The defendant contended that he had the right and the duty to give his stepson religious training and instruction and in good faith to teach him that war and the draft were wrong. He claimed that his actions were protected under the First Amendment rights of freedom of religion and freedom of speech. *Id.* at 598. The court, relying on *Reynolds*, rejected this argument holding that since Congress had the constitutional power to enact laws requiring registration and to make that requirement effective, the defendant could not, under the protection of the first amendment, counsel his stepson to refuse or evade registration. *Id.* at 599. The court stated:

"It is one thing for a person to entertain religious beliefs, to express those beliefs, and to teach them to his children. It is another thing to counsel and urge violation of valid penal legislation. Freedom of conscience and freedom to adhere to such religious organization or form of worship as the individual may choose cannot be restricted by law. On the other hand, it safeguards the free exercise of the chosen form of religion. Thus, the amendment embraces two concepts,— freedom to believe and freedom to act. The first is absolute but, in the nature of things, the second cannot be. Conduct remains subject to regulation for the protection of society." *Id.* at 599–600.

The court distinguished between interference with religious beliefs, which the court cannot do, and interference with religious practices, which the court can do and added that a man may not excuse his practices that are contrary to law because of his religious beliefs. "To permit this would be to make the professed doctrines of religious belief superior to the law of the land, and in effect to permit every citizen to become a law unto himself." *Id.*[8]

Like the defendant in *Warren*, Terpstra believes that certain laws are detrimental and therefore should be disobeyed. Terpstra believes that the Indiana statutes in question must be disobeyed because they contradict his religious beliefs and training. However, Terpstra's religious beliefs do not constitute a legal defense to his charges. Our state legislature has a duty to enact legislation providing for the general welfare and safety of the people of this state. *State ex rel. Mavity v. Tyndall* (1947), 225 Ind. 360, 74 N.E.2d 914, 916, *cert. denied*, 333 U.S. 834, 68 S.Ct. 609, 92 L.Ed. 1118 *reh. denied*, 333 U.S. 858, 68 S.Ct. 732, 92 L.Ed. 1138; *Zahm v. Peare* (1985), Ind.App., 502 N.E.2d 490, 494. The statutes in question protect Indiana citizens in that they promote highway safety. Our supreme court has held that highway safety is a compelling state interest. *Ruge v. Kovach* (1984), Ind., 467 N.E.2d 673, 681. *See, also, Heying v. State* (1987), Ind.App., 515 N.E.2d 1125, 1129. The statute concerning driver's licenses ensures a driver's ability to maneuver a motor vehicle on public roads in Indiana, thus promoting public safety. The statutes concerning the registration of vehicles protect the owners of motor vehicles, persons holding liens and

---

**8.** Both *Warren, supra* and *Reynolds, supra* were cited extensively in *United States v. Ogle,* 613 F.2d 233 (10th Cir.1979), *cert. denied,* 449 U.S. 825, 101 S.Ct. 87, 66 L.Ed.2d 28. In *Ogle,* a defendant was convicted of knowingly and corruptly endeavoring to influence, impede and obstruct the due administration of justice in a case pending in a United States district court. The defendant endeavored to deliver to a juror a pamphlet called "A Handbook for Jurors." This pamphlet, written by the defendant, teaches that tax crimes are not true crimes and that it is unnecessary for jurors to follow the law of the land where they conceive of the law being contrary to their concepts of morals. The book also teaches that a juror is empowered to determine if a law under which a person is charged is contrary to the Constitution or common law and acquittal is appropriate. The emphasis in the handbook is that the juror is empowered to acquit where he feels that the law is unfair or that it infringes on fundamental rights. As a defense to the charge, Ogle wanted to testify that the convictions, set forth in the handbook, were genuine and therefore he did not have a "corrupt" motive. The court denied his request and rejected his argument stating: "There is no support for the defendant's position that a consciencious belief that a law is unconstitutional or contrary to common law constitutes a good defense. This is an ill-founded notion." *Id.* at 245.

the public. *VanNatta v. Crites* (1978), 178 Ind.App. 113, 381 N.E.2d 532, 537. Since our state legislature has the power to enact these statutes and these statutes further a compelling state interest, they must be upheld. As noted in *Warren, supra,* certain conduct must be regulated for the protection of society. In this case, the collective benefit to the general public outweighs any infringement on Terpstra's free exercise rights. If Terpstra desires to drive a motor vehicle on public roads in Indiana, he must comply with the applicable Indiana law.[9]

Terpstra's argument that the statutes in question burden his fundamental right to travel also fails. While there exists a fundamental right to travel, neither this court, nor our supreme court, nor the United States Supreme Court has ever held that there exists a fundamental right to drive a motor vehicle. *Bell v. Burson,* 402 U.S. 535, 539, 91 S.Ct. 1586, 1589, 29 L.Ed.2d 90 (1971); *Ruge, supra;*[10] *Heying, supra.* Since the right to operate a motor vehicle is not a fundamental one, the State must show only that these statutes further a legitimate, rather than a compelling, state interest. *Heying, supra* (citing *Vance v. Bradley* (1979), 440 U.S. 93, 99 S.Ct. 939, 59 L.Ed.2d 171). As noted earlier, highway safety is not merely a legitimate state interest; it is a compelling one. *Heying, supra.* As these statutes do not burden a fundamental right and are ration-

ally related to the state's interest in highway safety, they are constitutional.

The trial court's judgment is affirmed.

RATLIFF, C.J., and GARRARD, P.J., concur.

---

9. We note that if the State allowed Terpstra to violate I.C. 9–1–4–5, 7, 20 and 40 because of his religious beliefs, while requiring all other citizens to comply, this action may violate the First Amendment's Establishment Clause. The First Amendment provides that "Congress shall make no law respecting an establishment of religion or prohibiting the free exercise thereof." *U.S. Const. Amend I.* This language has been interpreted as committing the States to a position of neutrality between religions. *In Epperson v. Arkansas,* 393 U.S. 97, 89 S.Ct. 266, 21 L.Ed.2d 228 (1968), the Supreme Court explained that government must be neutral in matters of religious theory, doctrine and practice. It may not be hostile to any religion or to the advocacy of non-religion and it may not aid, foster, or promote one religion or religious theory against another. *Id.* at 103, 104, 89 S.Ct. at 269, 270. In *Lemon v. Kurtzman* (1971), 403 U.S. 602, 91 S.Ct. 2105, 29 L.Ed.2d 745, the United States Supreme Court articulated a tripartite test to

determine when government action violates the First Amendment Establishment Clause. This test requires that: (1) the State action have a secular purpose, (2) the principle or primary effect must be one that neither advances nor inhibits religion and (3) the action must not foster an excessive government entanglement with religion. *Id.* at 612–613, 91 S.Ct. at 2111. All three requirements must be satisfied. In this case, if the State were to carve out a "religious exception" for Terpstra, this may violate requirement number 2, in that the primary effect of this action may advance Terpstra's religion or religious beliefs.

10. In *Ruge, supra,* our supreme court noted that while the Supreme Court blurred the distinction between "right" and "privilege" with respect to driving in *Bell,* that Court did not define driving as a "right" but rather referred to it as an entitlement. *Ruge,* 467 N.E.2d at 677.