Terry R. SCHREFLER, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 45A03–9505–CR–158.

Court of Appeals of Indiana.

Jan. 18, 1996.

Paul D. Stanko, Crown Point, for appellant.

Pamela Carter, Attorney General, Christopher L. Lafuse, Deputy Attorney General, Indianapolis, for appellee.

## OPINION

STATON, Judge.

In this consolidated interlocutory appeal, Terry R. Schrefler challenges the denial of his motions to dismiss charges of operating a vehicle with a blood alcohol content of .10% or greater, a class D felony,[1] and operating while intoxicated, a class D felony.[2] Schrefler presents one (restated) issue for appellate review: whether the administrative suspension of Schrefler's driving privileges bars his subsequent criminal prosecution for operating a vehicle while intoxicated.

We affirm.

The undisputed facts reveal that on November 26, 1991, Schrefler was arrested for operating a vehicle with a blood alcohol content of .10% or greater. In a separate incident on October 12, 1993, Schrefler was arrested for operating while intoxicated. Following a finding of probable cause in each action, Schrefler's driving privileges were administratively suspended by the Bureau of Motor Vehicles. Thereafter, Schrefler filed motions to dismiss the pending criminal charges, arguing that double jeopardy barred his prosecution based on the previously imposed administrative suspensions. The trial court denied both motions. Schrefler then filed a motion to correct er-

1. IND.CODE § 9–30–5–1 (1993); IND.CODE § 9–30–5–3 (1993) (elevating the charge to a class D felony based on a prior OWI conviction).

2. IND.CODE § 9–30–5–2 (1993); IC 9–30–5–3.

ror, which was denied. The issues were consolidated and certified for interlocutory appeal pursuant to Ind.Trial Rule 4(B)(6).

■ Schrefler argues that the criminal charges brought against him following the suspension of his driving privileges pursuant to IND.CODE § 9–30–6–9(b)[3] constitute multiple punishments for the same offense, and thus violate the double jeopardy provisions of the federal and state constitutions. Because he raises a constitutional challenge to a legislative act, Schrefler faces a difficult burden. It is well-settled that an act of our legislature is afforded a presumption of constitutionality. *Matter of Tina T.* (1991), Ind., 579 N.E.2d 48, 56. The burden to rebut this presumption is on the challenger, and all reasonable doubts are resolved in favor of the act's constitutionality. *Id.*

■ The United States Supreme Court has interpreted the Double Jeopardy Clause[4] of the Fifth Amendment as protecting against three distinct abuses. These include: "a second prosecution for the same offense after acquittal; a second prosecution for the same offense after conviction; and multiple punishments for the same offense." *United States v. Halper* (1989), 490 U.S. 435, 440, 109 S.Ct. 1892, 1897, 104 L.Ed.2d 487. Similarly, article I, section 14 of the Indiana Constitution[5] has been interpreted as prohibiting successive prosecutions and multiple punishments for the same offense. *State v. Mullins* (1995), Ind.App., 647 N.E.2d 676, 678. However, this constitutional prohibition applies only to criminal prosecutions. *Id.* (citing *Williams v. State* (1986), Ind., 493 N.E.2d 431, 433). It is the prohibition against multiple punishments that is at issue in this case.

Schrefler argues that the administrative suspensions of his driving privileges constitute separate punishments for the same conduct at issue in his criminal prosecutions, thereby violating the constitutional prohibitions against double jeopardy. His argument hinges on the United States Supreme Court's decision in *Halper, supra.* In *Halper,* the Supreme Court held that double jeopardy concerns could be invoked in "the rare case," in which a civil action based on the same conduct is punitive in effect. *Id.* The Court stated:

> The notion of punishment, as we commonly understand it, cuts across the division between the civil and the criminal law, and for the purposes of assessing whether a given sanction constitutes multiple punishment barred by the Double Jeopardy Clause, we must follow the notion where it leads.... To that end, the determination whether a given civil sanction constitutes punishment in the relevant sense requires a particularized assessment of the penalty imposed and the purposes that the penalty may fairly be said to serve. Simply put, a civil as well as a criminal sanction constitutes punishment when the sanction as applied in the individual case serves the goals of punishment.

*Halper, supra,* at 447, 448. The Court went on to explain that where ordinary civil actions have remedial goals, the traditional goals of punishment are retribution and deterrence. *Id.* In effect, the teachings of *Halper* require that our double jeopardy analysis focus on the underlying purposes and goals of the challenged sanction.

■ The sanction at issue in this case is the administrative suspension of Schrefler's driving privileges. There exists no absolute right to obtain and keep a driver's license in Indiana. *Ruge v. Kovach* (1984), 467 N.E.2d 673, 677, *reh. denied.* Instead, driving privileges are an entitlement that may be withheld, suspended or revoked by the State for

---

**3.** This section provides:

> If the [probable cause affidavit] states that a chemical test resulted in prima facie evidence that a person was intoxicated, the bureau [of motor vehicles] shall suspend the driving privileges of the person:
> (1) for one hundred eighty (180) days; or
> (2) until the bureau is notified by the court that the charges have been disposed of;
> whichever occurs first.

IC 9–30–6–9(b).

**4.** The Fifth Amendment provides "[n]o person shall ... be subject for the same offense to be twice put in jeopardy of life or limb." U.S. CONST. amend. V.

**5.** Article I, section 14 of the Indiana Constitution provides that "[n]o person shall be put in jeopardy twice for the same offense."

reasons involving public safety. *See* IND. CODE §§ 9–24–2–1 *et seq.* (prohibiting certain persons from obtaining a driver's license or permit); IND.CODE §§ 9–25–4–1 *et seq.* (requiring persons operating or registering a vehicle in Indiana to meet minimum standards of financial responsibility or face suspension of license and registration); IND. CODE §§ 9–30–10–1 *et seq.* (requiring suspension or revocation of driving privileges for habitual violators of certain traffic laws). This elaborate statutory scheme conditions the use of a driver's license on the observation of certain rules and operating standards meant for public safety; the suspension or revocation of the license merely signifies the failure of the licensee to comply therewith.

 A close examination of Indiana's administrative suspension scheme reveals that it was designed to promote the State's interest in keeping its highways safe from intoxicated drivers. *Ruge, supra,* at 681. To that end, the immediate suspension of driving privileges upon a finding of probable cause bears a rational relationship to a legitimate governmental purpose; that is, promoting highway safety.[6] It is clear that suspension of a drunk driving offender's driving privileges protects not only the safety of the public at large, but also the safety of the offender himself. That the suspension of driving privileges has some punitive impact on the offender, and may be implemented as a part of sentencing upon criminal conviction, is merely incidental to the overriding remedial purpose of the statute.[7] On this basis, we conclude that administrative suspension of a person's driving privileges upon a finding of probable cause that he operated a vehicle while intoxicated does not serve the goals of punishment.[8] *Halper, supra.*

The Indiana Supreme Court's decision in *Ruge, supra,* provides further support for this conclusion. In that case, several drunk driving defendants challenged the constitutionality of their administrative suspensions based on notions of due process. In concluding that the administrative suspension procedure[9] did not violate due process, the court determined that the suspension procedure

6. Schrefler argues that the automatic suspension of his driving privileges constitutes punishment because "most citizens would consider suspension of driving privileges 'punishment.'" Appellant's Brief at 9. This argument is unpersuasive. The defendant's perspective is not controlling in determining whether a sanction constitutes punishment, because "for the defendant, even remedial sanctions carry the sting of punishment." *Halper, supra,* at 447, n. 7. Instead, it is the purposes actually served by the sanction at issue that are determinative. *Id.*

7. It is not necessary that the civil sanction be devoid of any punitive or deterrent effect. After a "particularized assessment of the penalty imposed," the civil sanction need only be "fairly characterized as remedial." *Halper, supra* at 449. In *Halper,* the defendant was convicted under the Federal False Claims Act of filing inflated Medicare claims totaling $585.00. Following the defendant's conviction, the federal government sought to collect a fine of $130,000 based on the defendant's statutory violations. The Supreme Court determined that a civil penalty in an amount so disproportionate to the government's damages could not honestly be characterized an anything but punishment or retribution. *Id.* at 452. In contrast, Indiana's administrative suspension provisions are rationally related to the public safety interest at stake, and are not so overwhelmingly disproportionate to that interest to constitute a violation of double jeopardy.

8. The Supreme Court recently applied the *Halper* rationale in the context of a separately imposed drug tax. *Department of Revenue of Montana v. Kurth Ranch* (1994), —— U.S. ——, 114 S.Ct. 1937, 128 L.Ed.2d 767. In that case, the Court concluded that the tax imposed under Montana's Dangerous Drug Act constituted "punishment" for double jeopardy purposes. This result was warranted because of the character of the tax at issue: the tax was wholly deterrent in its purpose, was of such a high rate that it bore no reasonable relationship to actual damages suffered by the State, and was imposed only after arrest and confiscation of the contraband at issue. *Id.* at ————, 114 S.Ct. at 1946–1948. The implications of *Kurth Ranch* in the context of taxation are not at issue here. *Kurth Ranch* is important to the case at bar only to the extent that it is distinguishable based on the overriding remedial purpose of the challenged statute; that is, to promote the State's interest in providing safe highways for its citizens. *See Ruge, supra.*

9. At the time that *Ruge* was decided, the relevant statutory provisions were codified at Ind Code §§ 9–11–4–1 *et seq.,* which chapter was entitled "Implied Consent; Administrative and Evidentiary Matters." Although this chapter has since been recodified and is presently found at IC 9–30–6–1 *et seq.,* its provisions remain substantially unchanged.

was wholly civil in nature, and the implementation thereof did not constitute criminal punishment. *Id.*

Finally, numerous jurisdictions faced with this double jeopardy challenge have consistently upheld the constitutionality of similar statutes. *See Thompson v. State of Maine* (1995), 1st. Cir., 896 F.Supp. 220; *State v. Zerkel* (1995), Alaska App., 900 P.2d 744; *Snow v. Superior Court* (1995), App., 183 Ariz. 320, 903 P.2d 628; *Davidson v. MacKinnon* (1995), Fla.App., 656 So.2d 223; *State v. Higa* (1995), Haw., 897 P.2d 928; *State v. Funke* (1995), Iowa, 531 N.W.2d 124; *Butler v. Dep't. of Public Safety and Corrections* (1992), La., 609 So.2d 790; *State v. Savard* (1995), Me., 659 A.2d 1265; *Maryland v. Jones* (1995), App., 340 Md. 235, 666 A.2d 128; *State v. Hanson* (1995), Minn.App., 532 N.W.2d 598; *State v. Young* (1995), Neb. App., 530 N.W.2d 269; *State v. Cassaday* (1995), 140 N.H. 46, 662 A.2d 955; *State v. Zimmerman* (1995), N.D., 539 N.W.2d 49; *Tench v. Commonwealth* (1995), Va.App., 462 S.E.2d 922; *State v. Strong* (1992), Vt., 605 A.2d 510.

▇ Because we conclude that the administrative suspensions of Schrefler's driving privileges served a legitimate, nonpunitive governmental purpose, double jeopardy is not violated by the implementation of criminal proceedings based on the same conduct. The trial court properly denied Schrefler's motions to dismiss.

Affirmed.

HOFFMAN and NAJAM, JJ., concur.