Gordon Lyle HEAD, Appellant–
Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 45A05–9601–CR–40.

Court of Appeals of Indiana.

Aug. 5, 1997.

Marce Gonzalez, Jr., Merrillville, for Appellant–Defendant.

Pamela Carter, Attorney General, Christopher L. Lafuse, Deputy Attorney General, Indianapolis, for Appellee–Plaintiff.

## OPINION

BARTEAU, Judge.

Gordon Head appeals his convictions following a jury trial for two counts of violating the Environmental Management Act, a Class D felony. He raises the following issues:

1. Whether Head's convictions violate the Fifth Amendment prohibition against Double Jeopardy because he had already been punished for the underlying acts in a separate civil suit for injunctive relief which included a monetary "cure penalty"?

2. Whether the trial court's order of restitution was contrary to law?

### FACTS

Head operated an "automobile fluff"[1] recycling center in Gary, Indiana. On February 14, 1991, after receiving a complaint from the Gary Air Pollution Agency, the Indiana Department of Environmental Management (IDEM) inspected Head's recycling center. IDEM observed that more than six thousand yards of automobile fluff had been dumped on the property. IDEM notified Head that the open dumping was a violation of the Environmental Management Act, and instructed him to correct the violation.

IDEM again inspected Head's recycling center in July of 1991. IDEM observed that additional automobile fluff was being dumped on the site. IDEM then informed Head that he needed to cease the open dumping and remove the automobile fluff from the site to a permitted landfill. Head was further notified that he needed to obtain a Solid Waste Processing Facility permit from IDEM before the recycling center could process any automobile fluff. Head never obtained a permit.

On December 13, 1991, IDEM again inspected the recycling center and found that an additional 10,000 cubic yards of automobile fluff had been dumped on the site. IDEM then issued a formal Notice of Violation again informing Head that the recycling center was operating in violation of the Environmental Management Act. Despite that notice, Head continued to operate the recycling center. Subsequent testing of the automobile fluff indicated that it contained unacceptable levels of environmental contaminants. On December 4, 1992, Head was enjoined from receiving additional automobile fluff at the site and from processing any automobile fluff at the site. The injunction order also required Head to "secure the site to prevent entry, to contain the automobile fluff to prevent migration and run-off, to immediately dispose of said fluff at an approved facility, to assess the extent of the contamination and to reduce or eliminate said contamination." R. 301. The order imposed a penalty of $100 per day on Head until the provisions of the order were satisfied. Head was subsequently charged and convicted of two counts of violating the Environmental Management Act based upon his operation of the recycling center.

### MOTION TO STRIKE

■ We must initially address the State's motion to strike the "Order Granting Injunctive Relief" that appears in the appendix of Head's appellate brief. Such order does not appear in the trial record, and the trial court has informed us by order that the "Order Granting Injunctive Relief" was not made a part of the record at trial, but rather portions of the order were quoted in Head's pretrial motion to dismiss. Inasmuch as the "Order Granting Injunctive Relief" was not made a part of the record at trial, we must

---

1. Automobile fluff is the residue or debris that remains after cars are shredded and the exterior metal is removed. R. 408.

grant the State's motion to strike the order from the appendix of Head's brief.

However, the trial record does include an "Order on Plaintiff's Petition to Appear and Show Cause" which reflects the substance of the civil proceeding upon which Head bases his double jeopardy claim. Thus, we will address Head's double jeopardy claim based upon the "Order on Plaintiff's Petition to Appear and Show Cause."

### DOUBLE JEOPARDY

Head argues that his convictions are barred by the Double Jeopardy Clause of the Fifth Amendment because he was previously punished for the same actions in a civil injunction action. Head claims that a cure penalty imposed upon him in the injunction constituted a punishment, and therefore his subsequent criminal prosecution was barred.

The Double Jeopardy Clause states that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const. amend. V. The Double Jeopardy Clause "protects a person from suffering (1) a second prosecution for the same offense after acquittal, (2) a second prosecution for the same offense after conviction and (3) multiple punishments for the same offense." *Bryant v. State,* 660 N.E.2d 290, 295 (Ind. 1995), *cert. denied,* —— U.S. ——, 117 S.Ct. 293, 136 L.Ed.2d 213 (1996) (citing *North Carolina v. Pearce,* 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969)).

■ In determining whether a sanction subjects a person to a jeopardy, the sanction's label of "criminal" or "civil" is not controlling. *Id.* (citing *United States v. Halper,* 490 U.S. 435, 447, 109 S.Ct. 1892, 1901, 104 L.Ed.2d 487 (1989)). Rather, the test is whether the civil sanction constitutes a "punishment." [*Montana Dep't of Revenue v.] Kurth Ranch,* [511] U.S. [767], 779–81, 114 S.Ct. [1937,] 1946, [128 L.Ed.2d 767 (1994) ]. When the sanction serves the goals of punishment rather than the remedial purposes of compensating the government for its loss, it is a punishment and thus a "jeopardy" within the Double Jeopardy Clause. *Id.* The sanction's essence as a punishment can be identified "only by assessing the character of the actual sanctions imposed on the individual by the machinery of the state." *Halper,* 490 U.S. at 447, 109 S.Ct. at 1901. *Id.* at 295–96. A fine that is excessive and disproportionate to the government's actual damages constitutes punishment for double jeopardy purposes. *See Halper,* 490 U.S. at 452, 109 S.Ct. at 1904.

■ The record discloses that a civil penalty of $100 per day was imposed upon Head for each day up until he complied with the provisions of the order granting injunctive relief. That order was entered on December 4, 1992, and enjoined Head from "accepting additional automobile fluff and from processing automobile fluff at the site," and also required Head to "secure the site to prevent entry, to contain the automobile fluff to prevent migration and run-off, to immediately dispose of said fluff at an approved facility, to assess the extent of the contamination and to reduce or eliminate said contamination." R. 301. The civil penalty, on its face, serves the remedial goal of coercing Head into compliance with the injunction rather than serving the goal of punishment. Head had the ability to avoid the penalty by simply complying with the provisions of the injunction. Further, the amount of Head's civil penalty was not excessive, and it was ordered to be paid to the Environmental Management Special Fund, thus benefitting the party who would bear the costs of the harm caused by Head's failure to comply with the terms of the injunction. Therefore, the penalty has a compensatory purpose. This compensatory purpose is not altered by the fact that the penalty was imposed in addition to the costs that were expended to secure, contain, assess, and clean-up the site. *See Halper,* 490 U.S. at 448, 109 S.Ct. at 1902 ("Similarly, we have recognized that in the ordinary case fixed-penalty-plus-double-damages provisions can be said to do no more then to make the government whole. . . . What we announce today is a rule for the rare case where a fixed penalty provision subjects a prolific but small-gauge offender to a sanction overwhelmingly disproportionate to the damages he has caused."). We therefore find that the civil penalty did not constitute a jeopardy,

and thus did not bar Head's subsequent criminal prosecution and convictions.

### RESTITUTION

The trial court's sentencing order included the following language ordering Head to make restitution for his environmental violations:

[D]efendant to make restitution as follows:
1. Reimbursement to public defender fund for expense of representative for trial and appeal;
2. City of Hammond in the sum of $4,211.87;
3. Indiana Dept. of Environmental Management in the sum of $310,340.60;
4. U.S. Environmental Protection Agency in the sum of $2,380,450.03.
Defendant to be on probation for a period of five (5) years with the following conditions: He is to forward to the court copies of his W2 form each year; defendant is to notify his attorney in his law suit against Pilot Bros. pending in the federal court in Marion Co., IN; and forward to the court all pleadings to be filed in that law suit and keep the court advised of the progress thereof; any proceeds from the lawsuit are to be paid toward restitution in the order set out above.

R. 318. Head argues that the trial court's order of restitution is contrary to law because it was made contingent upon Head prevailing in another action. Head also argues that the restitution order was excessive and manifestly unreasonable.

■ Review of the trial court's order discloses that the restitution order was not contingent. Head's assertion that the order of restitution was contingent is based upon the trial court judge's statement, after entering the order, that he recognized Head would not be able to pay restitution unless he prevailed in the federal lawsuit. This statement regarding Head's ability to pay the restitution does not transform the restitution order into a contingent order. The trial court's order did not condition the restitution upon Head's success in the federal lawsuit, or upon any other event. Head's assertion that the restitution order was contingent is without merit.

■ Head also argues that the restitution order is an excessive fine in violation of

Article I, section 16 of the Indiana Constitution, and that the fine was manifestly unreasonable. An order of restitution in an amount equal to the damages caused by one's criminal actions does not constitute a fine, and thus, would not trigger an excessive fine analysis. We further note that Head does not assert that the order of restitution was not supported by the evidence, and as such, we cannot find that the restitution order was manifestly unreasonable.

### CONCLUSION

The civil penalty imposed upon Head in the injunction proceeding was remedial in character and did not constitute a jeopardy. Thus, Head's subsequent criminal convictions were not barred by double jeopardy. The trial court's order of restitution was proper.

Affirmed.

HOFFMAN, J., concurring in result with opinion.

SULLIVAN, J., concurring and concurring in result with separate opinion.

HOFFMAN, Judge, concurring in result.

I concur in result. I write only to clarify my position that the penalty assessed during the December 1992 injunction was based solely on compliance with the provisions of the civil order, not as a penalty for previous conduct for which Head could be held civilly and/or criminally responsible. Thus, unlike the civil penalty in *Department of Revenue of Montana v. Kurth Ranch,* 511 U.S. 767, 777–81, 114 S.Ct. 1937, 1945–1946, 128 L.Ed.2d 767 (1994), where a tax was imposed for the same conduct that produced criminal sanctions, Head could have avoided the civil penalties altogether even after he had committed the conduct which led to criminal prosecution. The court prescribed civil penalties which would become effective as Head failed to comply with the injunction.

I agree with the balance of the majority opinion.

SULLIVAN, Judge, concurring and concurring in result.

I fully concur in the majority opinion with regard to the issue of restitution. I join

Judge Hoffman's separate opinion concerning the double jeopardy issue and would merely add a few supplemental comments.

The "cure order" assessing a penalty of $100 per day was prospective only, dating from December 4, 1992. Of the two counts of which Head was convicted, one count alleged that the open dumping violation began on February 14, 1991. The second count alleged that the permit violation began on December 13, 1991. Thus the criminal violations took place and were punishable for conduct that had been committed prior to the commencement date of the coercive compliance order of December 4, 1992. Although there may have been an overlapping of a portion of the periods during which the criminal conduct continued, and the period covered by the "cure order", the overlap is of no moment insofar as double jeopardy is concerned. The validity of the criminal convictions is unrelated to the cure-penalty period and the validity of the cure-penalty is unrelated to the already complete and punishable criminal conduct which took place prior to the "cure order".

With respect to the remedial-penal analysis of the majority opinion, I am unable to conclude that the fact that the fine inures to the benefit of the Environmental Management Special Fund determines its underlying nature. I do, however, agree that the penal aspect is "merely incidental to the overriding remedial" effect of forcing compliance with the injunctive order. *See Schrefler v. State* (1996) Ind.App., 660 N.E.2d 585, 588.[2]

Subject to the comments herein, I concur in the affirmance of the two convictions and of the restitution order.

---

**2.** With respect to the remedial-penal analysis, it should be noted that *Schrefler v. State, supra,* was a non-analogous driver's license suspension case. I am unable, however, to reconcile that case with *Mitchell v. State* (1995) Ind., 659 N.E.2d 112, which held that the administrative license suspension statute is a penal statute. This dichotomy invites consideration of *United States v. Ursery* (1996) —— U.S. ——, 116 S.Ct. 2135, 135 L.Ed.2d 549, which indicates that the focus of the inquiry is whether the civil or administrative proceeding is personal or *in rem* in its thrust. Here, the thrust of the "cure order" is clearly personal in its effect upon Head, but the purpose of the proceeding is clearly remedial. In any event, the remedial aspects of the "cure order" dictate my concurrence in the affirmance of the convictions.