## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Sep 10 2020, 9:25 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Alexander W. Robbins
Bedford, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Benjamin J. Shoptaw
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Kristen Joy McGuinness, *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, *Appellee-Plaintiff.* | September 10, 2020 <br><br> Court of Appeals Case No. 20A-CR-460 <br><br> Appeal from the Hendricks Superior Court <br><br> The Honorable Mark A. Smith, Judge <br><br> Trial Court Cause No. 32D04-1808-F5-99 |

**Altice, Judge.**

## Case Summary

Kristen McGuinness pled guilty to Level 5 felony causing death while operating a motor vehicle while intoxicated. The trial court sentenced her to four years in the Indiana Department of Correction (DOC), with one year suspended to probation, and ordered her driver's license suspended for six years. She asserts that the trial court abused its discretion in sentencing her and challenges the length of her driver's license suspension.

We affirm.

## Facts & Procedural History

Around midnight on June 17, 2018, McGuinness, age nineteen, was driving her vehicle eastbound on US 40. She was alone in her car. McGuinness rear-ended a pick-up truck in which Brittany Fields was a passenger. The collision caused the pick-up to spin, enter the median, and roll over. Fields was ejected from the vehicle and landed in the lanes of US 40. McGuinness and Fields's husband, Zane Fields, who had been driving the pick-up, were attempting CPR when Hendrick's County Sheriff's Department Deputy Andrew Thomas arrived on the scene. Zane told Deputy Thomas that he had observed a vehicle approaching from the rear at a high rate of speed so he switched lanes to allow it to pass but it struck their vehicle.

While speaking with McGuinness, Deputy Thomas detected the smell of alcohol on her breath. McGuinness told Deputy Thomas that a third car struck her vehicle and caused her to hit the pick-up, but Deputy Thomas saw no

damage to the rear of McGuinness's vehicle and Zane recalled only one set of headlights approaching. McGuinness provided a breath sample, which had a blood alcohol content of .15. She later provided a blood draw which indicated a blood alcohol concentration equivalent of .122 grams of alcohol per one hundred milliliters of her blood. Fields was transported to Indianapolis with significant head injuries as well as other serious injuries.

[5] On June 18, 2018, the State charged McGuinness with Count 1, Level 6 felony operating while intoxicated causing serious bodily injury and Count 2, Class C misdemeanor minor consuming alcohol. McGuinness was arrested on June 18, 2018 and posted bond the next day. She remained out on bond under enhanced pretrial supervision.

[6] Fields died from her injuries on July 31, 2018, never having been released from the hospital. On August 14, 2018, the State moved to add Count 3, Level 5 felony causing death while operating a motor vehicle while intoxicated, and Count 4, Level 5 felony causing death when operating a vehicle with a BAC of .08 or more. The State's motion included an attached copy of alcohol testing results "for purposes of defendant's mandatory license suspension." *Appellant's Appendix* at 25. On August 16, the trial court granted the motion and ordered McGuinness's license "suspended immediately." *Id*. at 26.

[7] On December 2, 2019, McGuinness and the State entered into a plea agreement in which she pled guilty to Count 3, Level 5 felony operating while intoxicated causing death. The agreement provided for an open sentence with executed

time not exceeding four years, and the State agreed to dismiss all remaining counts. At a guilty plea hearing that same date, the court accepted the plea and set the matter for a sentencing hearing on January 3, 2020.

[8] At the sentencing hearing, Fields's mother, Fields's father, and Zane's mother each made a statement to the court. Their statements reflected the pain and suffering that Fields endured while hospitalized and expressed the anguish and sadness that her death left in their lives. They also advised the court of Fields's young son, who would be too young to remember her.

[9] McGuinness presented the testimony of four witnesses: the human resources director at Indy Vet, where McGuinness worked at the time of the accident and was still employed, the owner of Indy Vet, and two longtime family friends. The testimony of the Indy Vet witnesses reflected that McGuinness was a reliable and good employee, had never come to work under the influence, and was helpful to other employees and that Indy Vet was willing to employ McGuinness with stipulations related to having a felony conviction. Written testimony from others reflected that McGuinness was a trustworthy person, the incident was out of character for her, she had never exhibited any signs of substance abuse, and she very remorseful for what occurred. The court also admitted a letter written by McGuinness's therapist indicating that McGuinness was diagnosed with PTSD in May 2019 and continued to see a therapist for treatment. The presentence investigation report reflected that McGuinness had no prior criminal history, is a high school graduate, and possessed an associate degree in Veterinary Technology.

[10] McGuinness also testified, reading a statement in which she apologized to Fields's family and friends, expressed remorse and regret, and took responsibility for her actions. McGuinness testified to attending a Mothers Against Drunk Driving (MADD) class in July 2018 and completing a substance abuse program in the summer and fall of 2018. On cross-examination, McGuinness said that, on the night in question, she had consumed alcohol at a gathering for someone who had returned from the Army.

[11] The State asked the court to impose six years with four years executed and to suspend her driver's license for six years. The defense asked the court to impose three years of incarceration, all suspended. At the hearing, before pronouncing its sentence, the court advised:

> It's not my job to extend forgiveness, there has been a lot of talk about forgiveness here this morning. My job is to follow the law and apply it to the facts, and that is what I try to do. I'm not supposed to be swayed by sympathy, bias, prejudice, or any of those types of things. So, what I've tried to do is craft a sentence that I believe is appropriate based upon the law and the facts that I've heard here this morning[.]

*Transcript* at 86.

[12] Thereafter, the trial court, at the hearing and in its written sentencing order, found the following two aggravators: (1) McGuinness was under twenty-one years old at the time the act was committed, and (2) "the emotional impact on the siblings, the family, and the son who has to grow up without a mother." *Id.* at 88. The trial court found the following mitigators: (1) McGuinness has no

criminal history; (2) she is likely to respond to probation or short-term imprisonment; (3) her character and attitude indicate that she is unlikely to commit another crime; and (4) she entered into a plea and accepted responsibility for the offense. The trial court sentenced McGuinness to four years in the DOC with one year suspended to probation on home detention, ordering McGuinness to perform eighty hours of community service, with forty being involved on victim impact panels. The court also ordered her driver's license suspended for six years. McGuinness now appeals.

# Discussion & Decision

## *I. Sentencing*

[13] McGuinness argues that the trial court abused its discretion when it sentenced her and asks us to vacate her sentence and remand with instructions to impose no more than three years. Sentencing decisions rest within the sound discretion of the trial court and are reviewed on appeal only for an abuse of discretion. *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind. 2007), *clarified on other grounds on reh'g*, 875 N.E.2d 218 (Ind. 2007). An abuse of discretion occurs where the decision is clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom. *Moyer v. State*, 83 N.E.3d 136, 141 (Ind. Ct. App. 2017), *trans. denied*. When sentencing, a trial court abuses its discretion if it, among other things, "considers reasons that 'are improper as a matter of law.'" *McCain v. State*, 148 N.E.3d 977, 981 (Ind. 2020) (citing *Buford v. State*, 139 N.E.3d 1074, 1081 (Ind. Ct. App. 2019) and quoting *Anglemyer*, 868 N.E.2d at 491). If the

trial court has abused its discretion, we will remand for resentencing "if we cannot say with confidence that the trial court would have imposed the same sentence had it properly considered reasons that enjoy support in the record." *Buford*, 139 N.E.3d at 1081 (quoting *Anglemyer*, 868 N.E.2d at 491). The relative weight or value assignable to reasons properly found, or those which should have been found, is not subject to review for abuse of discretion. *Id*.

[14]   McGuinness asserts that the trial court erred when it found the impact on Fields's family to be an aggravating factor. We agree. This court has explained:

> Under normal circumstances, the impact upon a victim's family is not a proper aggravating circumstance for purposes of sentencing. *See Bacher v. State*, 686 N.E.2d 791, 801 (Ind. 1997). In *Bacher*, our supreme court explained that because the impact on family members accompanies almost every case dealing with the death of a victim, it is not appropriate to consider that impact as an aggravating factor unless that impact was of such a destructive nature not normally associated with the commission of the offense in question and the impact was foreseeable to the defendant. *Id*. Here, Rodriguez was charged with operating a vehicle while intoxicated causing death being an essential element of the offense. Therefore, it is not appropriate to consider the impact of the victim's death on her family, because death is normally associated with the commission of the offense in question; although its impact was not necessarily foreseeable to the defendant. *See id*.

*Rodriguez v. State*, 785 N.E.2d 1169, 1177 (Ind. Ct. App. 2003), *superseded by statute on other grounds, trans. denied*. Accordingly, the trial court abused its discretion when it considered the impact of Fields's death on her family.

[15]     That said, a single aggravating circumstance may be sufficient to enhance a sentence. *Buford*, 139 N.E.3d at 1081. When a trial court considers an improper aggravator but other valid aggravating circumstances exist, a sentence enhancement may still be upheld. *Id.* Here, the trial court's other identified aggravator was that McGuinness was under the age of twenty-one, specifically nineteen, and thus under the legal age for drinking alcohol. There is no challenge to this aggravator, and we find that it is valid. Our Supreme Court has held that a sentence may be upheld where a single aggravating factor supports it, so long as we can say with confidence that in the absence of the invalid aggravator(s) the trial court would have imposed the same sentence. *McCain*, 148 N.E.3d at 981 (quotation omitted); *see also Phelps v. State*, 914 N.E.2d 283, 293 (Ind. Ct. App. 2009) (citing *Bacher v. State*, 722 N.E.2d 799, 803 (Ind. 2000)).

[16]     Here, the court was faced with a tragic accident with horrible consequences on both sides of the equation. It delivered a thorough explanation for its sentencing decision, recognizing that Fields's family obviously suffered a severe and traumatic loss and that McGuinness made a terrible decision, which she appeared to deeply regret. As the court recognized, however, the accident and loss of life was "totally preventable" and stemmed from a "selfish act." *Transcript* at 87. The advisory sentence for a Level 5 felony, which McGuinness requests, is three years. Ind. Code § 35-50-2-6. Here, the court imposed four years, with one suspended. Based on the record before us, we can say with confidence that the court would have imposed the same sentence absent the

invalid aggravator.[1] We do not find that the trial court abused its discretion in sentencing McGuinness.

## II. License Suspension

[17] McGuinness next argues that her six-year driver's license suspension is inappropriate in light of the nature of the offense and her character, and she asks us to revise it under our authority pursuant to Ind. Appellate Rule 7(B).[2] The State asserts, among other things, that license suspensions are not criminal punishments and not reviewable under App. R. 7(B), and, therefore, McGuinness has waived her claim. We agree with the State insofar as license suspensions are not punitive in nature, as explained below, but decline to find that McGuinness has waived her challenge to the length of the suspension.

[18] We begin by observing that "[t]here exists no absolute right to obtain and keep a driver's license in Indiana." *Schrefler v. State*, 660 N.E.2d 585, 587 (Ind. Ct. App. 1996) (citing *Ruge v. Kovach*, 467 N.E.2d 673, 677 (Ind. 1984)). Rather, driving privileges are an entitlement that may be withheld, suspended, or revoked by the State for reasons of public safety. *Id.* at 587-88.

---

[1] To the extent that McGuinness argues that the trial court improperly weighed the aggravators and mitigators, we note that trial courts no longer have any obligation to weigh aggravating and mitigating factors against each other when imposing a sentence, and a trial court cannot now be said to have abused its discretion in failing to "properly weigh" such factors. *Anglemyer*, 868 N.E.2d at 491.

[2] App. R. 7(B) provides that we "may revise a sentence authorized by statute if, after due consideration of the trial court's discretion, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender."

[19]     Ind. Code § 9-30-16-2(c), regarding suspension of driving privileges for operating a vehicle while intoxicated, provides, in pertinent part:

> If a person is convicted of an offense that includes the element of causing the death of another person and the offense involved the operation of a motor vehicle or was an offense under IC 9-30-5, the court shall order that the person's driving privileges are suspended for a period of at least two (2) years and not more than the maximum allowable period of incarceration of the criminal penalty for the offense.

The plain language of this statute provides that, when the predicate conviction occurs, the trial court *shall* suspend a defendant's driving privileges for at least two years and not more than the maximum allowable period of incarceration for the offense. In this case, McGuinness was convicted of a Level 5 felony, the sentencing range for which is between one and six years. I.C. § 35-50-2-6(b). Therefore, pursuant to I.C. § 9-30-16-2(c), the trial court could suspend McGuinness's license for between two and six years. That decision was left to the court's discretion. *Cf. Adams v. State*, 960 N.E.2d 793, 797 (Ind. 2012) (addressing now-repealed Ind. Code § 35-48-4-15 – which made license suspension mandatory when a motor vehicle was "used" in the commission of certain drug offenses – and stating, "The statute leaves the court discretion to decide the *length* of the suspension, but not *whether* to order it.") (emphases in original); *Mitchell v. State*, 659 N.E.2d 112, 114 (Ind. 1995) (applying now-repealed statute requiring trial court to suspend a defendant's driver's license upon conviction for possession of cocaine and observing that, once a conviction

is obtained, trial court must suspend driving privileges and "[t]he trial court's discretion extends only to the length of the suspension").

[20] The State argues that license suspension is not a criminal penalty. We agree. Our Supreme Court, in addressing a lifetime driver's license forfeiture following conviction for driving while suspended as a habitual traffic violator, explained:

> A sanction is a criminal punishment when its purpose is punitive rather than remedial. A collateral consequence, by contrast, is a civil penalty or disability imposed either by operation of law at the time of conviction or because of a subsequent, separate proceeding by a court or administrative agency. These consequences may apply indefinitely or for a limited period[.] . . .
>
> Some collateral consequences impose onerous, long-lasting burdens on an individual. Other collateral consequences serve important public interests. A driver's license suspension falls under this latter category.

*State v. Reinhart*, 112 N.E.3d 705, 713 (Ind. 2018) (internal citations omitted).

[21] In *Moala v. State*, 969 N.E.2d 1061 (Ind. Ct. App. 2012), this court addressed a defendant's double jeopardy claim related to his convictions for Class C misdemeanor operating while intoxicated, which carried an automatic license suspension upon conviction, and Class B misdemeanor public intoxication. The court expounded on the remedial purpose of the license suspension statutes, stating:

> [T]he administrative suspension scheme was "designed to promote the State's interest in keeping its highways safe from

intoxicated drivers" and although "the suspension of driving privileges has some punitive impact on the offender . . . [it] is merely incidental to the overriding remedial purpose of the statute."

*Id*. at 1066 (*quoting Schrefler*, 660 N.E.2d at 588). In sum, "[w]hether it be for life or for a more limited time, the suspension of one's driving privileges does not constitute punishment." *Hazelwood v. State*, 3 N.E.3d 39, 43 (Ind. Ct. App. 2014).

[22] With the above in mind, our task is to determine whether the trial court's decision to suspend McGuinness's license for a period of six years was an abuse of discretion. An abuse of discretion occurs when the decision clearly contravenes the logic and effect of the facts and circumstances before the court. *Adams*, 960 N.E.2d at 796-97. Here, McGuinness acknowledges that her actions resulted in Fields's death, but urges that a "relatively low alcohol concentration," no observable signs of impairment at the scene beyond the odor of alcohol on her breath, and her immediate attempts to assist Fields at the scene mitigate in her favor. *Appellant's Brief* at 18. She also highlights aspects of her character such as her education and employment, as well as the facts that she voluntarily sought out substance abuse treatment, was genuinely remorseful, and suffers from PTSD due to the accident. The State reminds us that McGuinness "blew almost twice the legal limit," "was driving at a high rate of speed" when she hit the pick-up, and was initially dishonest at the scene, telling Deputy Thomas that another car had hit her and caused her to collide with the pick-up truck. *Appellee's Brief* at 15, 16-17.

[23]    The trial court had the unenviable task of crafting a sentence and determining the length of license suspension in this sad case. The record reflects thoughtful consideration by the trial court. McGuinness has failed to persuade us that the trial court abused its discretion when it ordered that McGuinness's license be suspended for six years.

[24]    Judgment affirmed.

Riley, J. and May, J., concur.